### HONEYMAN v. COLORADO FUEL & IRON CO.

(Circuit Court, E. D. New York. November 14, 1904.)

1. FOREIGN CORPORATIONS—VALIDITY OF SERVICE UNDER NEW YORK LAW.

A plaintiff exercised due diligence to obtain service of summons and complaint on the officers of a foreign corporation defendant, so as to authorize service on a director under the laws of New York, where before making service on the director he called at the office of the secretary, and was told by the clerk in charge that neither the secretary nor any other officer of the company was within the state, and was given by such clerk the names of resident directors on whom the service might be made.

2. SAME—DOING BUSINESS IN STATE—MEETINGS OF DIRECTORS.

Where a corporation incorporated in another state, where the business for which it was organized is carried on, has no office in New York, except for the registration of transfers of stock, the facts that its directors have met there, as permitted by a by-law, at the office of one of their number, and that it keeps a bank account there, do not constitute

¶ 1. Service of process on foreign corporations, see note to Eldred v. Palace Car Co., 45 C. C. A. 3.

¶ 2. Foreign corporations doing business in state, see note to Wagner v. J. & G. Meakin, Limited, 33 C. C. A. 585.

a doing of business in the state which renders it subject to suit therein; it not being shown what business was transacted at the New York meetings, nor how long since any such meeting was held.

On Motion to Set Aside Service.

Frederic B. McNish, for complainant.

Howland, Murray & Prentice (Henry E. Howland and Samuel Untermyer, of counsel), for defendant.

THOMAS, District Judge. The complainant, residing in the city of New York, on October 11, 1904, caused the summons, with the complaint, in an action begun in the Supreme Court of the state of New York, to be served on Edwin Hawley, residing and being in said state, and who was at the time a director of the Colorado Fuel & Iron Company, a corporation organized under the laws of Colorado. The defendant removed the action to this court, and now moves to set aside the service upon the ground (1) That service upon Hawley, director, was void, as due diligence is not shown to have been used to serve either Cary, the assistant secretary, or Prentice, the vice president, of the defendant, both residing and having severally a place of business in the city of New York; (2) that the defendant was not at the time of such service doing business within the state.

Complainant's solicitor deposes that he—

"Called at the office of Cary, and was informed by the clerk in charge that all of the officers of the said defendant company were without the state of New York; that deponent informed said clerk that he had a summons to serve upon the said corporation, and was informed by said clerk that it would be impossible for such service to be made, and said clerk gave deponent the names of several directors who could be found in the city of New York, upon whom such process might be served."

The defendant meets this only by showing by the evidence of Cary that at the time he was within the state of New York, and—

"Continuously remained at the said office on every business day during all business hours, except between July 22 and August 8, 1904; that he has not refused to see any person calling at the office, or denied admission to any one desiring to serve process on him, nor has this official evaded service of process in any way whatever; and that at any time during the year last past, except for the period of two weeks, above mentioned, process might have been served upon this affiant at his office aforesaid within business hours."

This denial does not meet the plaintiff's statement that he called at Cary's office, and was informed by the clerk that no officers were within the state, that the summons could not be served, and gave him the names of directors. The complainant was at the disposition of the person found on duty in Cary's office, and was authorized to adopt and to act upon statements received, as he did by finding and serving upon Hawley.

The next question is whether defendant was at the time doing business in the state of New York. The complainant urges that it was so doing business, because (1) it had in the city of New York an office, officer, and facilities for registering stock; (2) it kept a bank account in New York; (3) the directors met in New York for the performance

133 F.—7

of duties; (4) certain transactions relating to capital were in progress in such state.

In 1896 the Central Trust Company of New York filed a bill against the Colorado Fuel & Iron Company in the Circuit Court of the United States for the Southern District of New York, and service of process was made upon defendant's president in the city of New York. Upon motion to set aside the service, it appeared that the company had no office in New York, although the contrary was alleged, except for the registration of the transfers of stock, and that it had a bank account in the city, upon which checks were drawn by officers out of the state. It was shown by defendant that its directors never met in this state, and that it did no business in the state, other than above stated. Judge Lacombe set aside the service. That ruling must be adopted, so far as it applies to the facts now present. The directors sometimes meet in New York, although all save two reside in Colorado. The president of the defendant gives evidence:

"That the directors of said Colorado Fuel & Iron Company sometimes meet in New York City for personal convenience, under a by-law which was originally adopted when the company had a general office in New York, several years ago. That the place of meeting of said board is a private office of a member of the board, and that all the officers of said company reside in Colorado, except one vice president, who resides in New York City, and is a member of the board of directors because he frequently acts as advising counsel."

The complainant, Honeyman, gives evidence:

"That deponent is informed and believes that a large majority of the directors of the said defendant company reside at the city of New York. That deponent knows that many meetings of the said board of directors are had in the city of New York, and believes that practically all the meetings of the said directors are had in the city of New York."

Complainant's attorney, McNish, states:

"That a large majority of the directors of the said defendant corporation reside in or near the city of New York, and that practically all of the meetings of the board of directors of the said defendant corporation are held within the city, county, and state of New York."

The evidence of McNish is upon information and belief. No witness states from actual knowledge what business was transacted at such meetings, and, in the absence of specific evidence, the court cannot conjecture whether the business was of such a nature as to necessitate the conclusion that the defendant was doing business in the state at the time the service was made upon Mr. Hawley. When did the board of directors last meet in New York? Was it a day or a week or a year or years previous to the service of the summons upon the director? What was the subject of their deliberations at such last meeting? Was any resolution then passed, and, if so, what was its subject, and could it be held to involve the transaction of business in the state of New York? These and other important questions are not answered. The mere fact that the directors occasionally meet in New York, without further advice as to what action was taken, gives no information upon which a conclusion can be predicated that the corporation was doing business in the state of New York. In the case of People v. Equitable Trust Co., 96 N. Y. 387, Judge Earl, expressly stating that the question did not

arise, made the following suggestion concerning the meaning of the words "doing business in this state":

"Does it mean occasional or incidental corporate business, or continuous business substantially through the year? Does a corporation that keeps an office in this state merely for the record and transfer of its stock, while it does the business for which it was chartered elsewhere, do its corporate business within this state, within the meaning of the statute? Does a corporation which has an office in this state, from which its officers give some directions for the management of its corporate business, all of which is done, elsewhere, carry on its corporate business in this state, any more than an individual carries on his business in this state who is engaged in the business of building a railroad in another state, over which he exercises some control by correspondence from his home here?"

In People v. Horn Silver Mining Co., 105 N. Y. 76, 11 N. E. 155, Judge Earl again says:

"We cannot construe the words 'doing business in this state' to mean the whole business of the corporation within this state; and while we are not prepared to hold that an occasional business transaction—that keeping an office where meetings of the directors are held, transfer books kept, dividends declared and paid, and other business merely incidental to the regular business of the corporation is done—would bring a corporation within this act, yet when, as in this case, all these things are done, and in addition thereto a substantial part of the regular business of the corporation is carried on here, then we are unable to say that the corporation is not brought within the act, as one 'doing business in this state.'"

In People ex rel. Dives-Pelican Co. v. Feitner (First Dept., 1902) 77 App. Div. 189, 78 N. Y. Supp. 1017, the court said:

"This corporation was not doing business in the state of New York in the sense in which that term is used in the statute. The fact that it had an office here, and was authorized to do business, did not make it 'doing business.' The office which it had here was used simply for the purpose of enabling the directors to meet in it and declare dividends upon its preferred stock, and the cash on hand and money in bank are for the purpose of paying such dividends when declared. This is all the business it did in the state of New York, and this clearly did not bring it within the statutes making it liable to taxation."

The complainant further alleges that the company is doing business in New York, and presents papers relating to a funding plan. The funding plan seems to be a matter in the hands of a committee of creditors for effecting "some plan whereby the properties of the company and the properties bought by Mr. Cary may be reassembled under a common ownership, and all the properties be preserved and worked together as an entirety"; and the plan also involves issuing new bonds and retiring existing bonds, etc. It would appear that at some time the property had been conveyed by the defendant to Mr. Cary. The fact that it was conveyed to Cary some time previous to the service of the summons does not show that at the time the service was made the corporation was doing business in the state, and certainly the undertaking of the committee to bring in the outstanding securities and subject them to the plan is not of itself "doing business in this state" on the part of the corporation, although the corporation is privy to the arrangement, has consented to carry it out, and will do what is necessary to carry it out when the plan is ready for final consummation. But what presumption is there that it will do any act in the state of New York? The litigation proposed in the suit at bar obviously relates to the capital of

the corporation, and its relation to its bondholders and creditors. Such a litigation properly should be conducted under the sovereignty that authorized the corporation, or directly or impliedly permits it to do business within its borders, and where such business, in real substance, is done. It is very evident that the actual business' for which the corporation was organized, and which it usually carries on, is not to the slightest extent done in the state of New York.

It follows from these views that the motion should be granted.