The judgment in this case must be affirmed, with costs to respondent. Dayton v. N. Y., L. E. & E. R. R. Co., 81 Hun, 284; Corwin v. N. Y. & E. R. R. Co., 13 N. Y. 42.

*Judgment affirmed, with costs to respondent.*

---

THE INTERNATIONAL TEXTBOOK COMPANY, Appellant, *v.* EDWARD CONNELLY, Respondent.

(County Court, Monroe County, March, 1910.)

Conflict of laws — Contracts — General principles — What deemed to be place of contract or place of performance.

Foreign corporations — Recognition, regulation and status:   Certificate of right to carry on business:   License fee — Effect of non-payment.

A foreign corporation, though it has not procured from the Secretary of State a certificate of authority to do business in this State, may maintain an action upon a contract with it not

4

made in this State; and it is no defense that it has not paid the license fee required by section 181 of the Tax Law for the privilege of carrying on business in this State.

Where defendant in this State signed one of the blank applications tendered him by an agent of a foreign corporation conducting the business of a correspondence school and "doing business" in this State, and said application was sent to the company's home office with part payment of the stipulated price for defendant's tuition, and, upon his acceptance as a student, he paid a further sum under the contract which provides that, in case default shall be made in the payment of any instalment due plaintiff, it may at its option determine that the balance unpaid under the contract shall at once become due and payable, and defendant thereafter makes default, the plaintiff is entitled to recover the balance unpaid for tuition, the contract not being a New York contract.

Appeal from a judgment of the Municipal Court of the city of Rochester. The opinion states the case.

Salisbury & Agate, for appellant.

Smith O'Brien, for respondent.

Barhite, Sp. C. J. The facts in this case were stipulated in the trial court. It appears from this stipulation that the plaintiff and appellant is a foreign corporation, incorporated under the laws of the State of Pennsylvania, with its principal office at Scranton, in said State. A part of the business of the plaintiff consists in furnishing instruction in various subjects by correspondence and through the medium of instructors to such persons as may desire to receive such instruction and enter into a contract with the plaintiff for that purpose.

The defendant signed one of the blank applications which was tendered him by an agent of the company at Rochester. That application was sent to the company's office at Scranton, together with the sum of five dollars which the defendant had paid as part of the stipulated price for his course of instruction.

The defendant was accepted as a student by the plaintiff, and notice to that effect was sent to him. Afterwards the

defendant paid the further sum of ten dollars. The contract provides that, in case default shall be made in the payment of any instalment due the plaintiff, the plaintiff can, at its option, determine that the balance unpaid under the contract shall at once become due and payable.

The defendant made default. The plaintiff takes advantage of the terms of the contract and sues to recover the balance unpaid.

The defendant makes three separate defenses to the cause of action set forth in the complaint.

*First.* At the time the contract was made the defendant was not yet twenty-one years of age.

*Second.* The plaintiff cannot maintain this action in the courts of this State because it has not yet procured from the Secretary of State a certificate authorizing it to do business in this State, as provided by sections 15 and 16 of the General Corporation Law.

*Third.* It cannot maintain this action because it has not paid the license fee to the State Treasurer and obtained from him the receipt as provided in section 181 of the Tax Law of the State.

By reason of the view which we take of the second and the third defenses, it is unnecessary to examine the first defense.

The second defense, that the plaintiff cannot maintain this action because it has not yet procured from the Secretary of State a certificate authorizing it to do business in this State, as provided by sections 15 and 16 of the General Corporation Law, must fail. It is admitted that the plaintiff is a foreign corporation. It is admitted that it has not procured from the Secretary of State the certificate in question.

Two essentials are required to bring the transaction under the control of the statute in question. The foreign corporation must be doing business in this State, and the contract in question must be made by the corporation in this State. Tallapoosa Lumber Company v. Holbert, 5 App. Div. 559.

It appears that the plaintiff has agencies in various

states and countries, including the State of New York, to solicit persons to contract with it for instruction. It has five districts and thirty division offices in this State. Each district office is in charge of one of plaintiff's district superintendents. Each division superintendent has under him a corps of plaintiff's representatives. The rent and other expenses of each of the offices are paid by plaintiff, including the salaries of the division superintendent and his corps of assistants. The payments made by subscribers are collected by the division superintendent and are deposited in a special account in his own name in a bank in the city where his office is situated. These moneys are sent by him from time to time to the plaintiff. Plaintiff sells textbooks, drawings and other outfits to purchasers in this State and elsewhere. Each of plaintiff's division superintendents and representatives in this State is required to be qualified to give instruction in mathematics to its students, and assistance in mathematics is given by them at said division offices to such of said students as desire the same. A tutor is also employed by plaintiff, who gives such assistance in mathematics at the Rochester division office on Tuesday and Thursday evenings of each week from seven to nine o'clock. There are now more than three hundred students in the Rochester division, enrolled in the different courses of study.

I think that, under this state of facts, the plaintiff is plainly doing business within the State of New York, and that this case must be distinguished from that class of cases where a foreign corporation, not maintaining an office in the State of New York, simply sends its agents through the State, who take orders which are sent to the home office and the orders there filled.

The maintenance of numerous offices within the State; the employment of numerous superintendents who have charge of these offices, and the power to employ and dismiss their assistants; the requirement that division superintendents shall be qualified to give and the fact that they do give instruction in mathematics at the various offices within the State; the employment of a tutor, whose duty

consists in aiding students in mathematics at the Rochester office at certain times, are acts which constitute "doing business within the State." The plaintiff also keeps the money in various banks throughout the State. The fact that each account is kept in the name of a division superintendent is of little moment. The money is the money of the plaintiff.

In Vaughn Machine Co. v. Lighthouse, 64 App. Div. 138, 141, the court says, in discussing the requirement of the Stock Corporation Law, that a foreign corporation shall not do business in the State without first having procured a certificate: "It contemplates a location, a domicile, having an office and the investment of some part of its capital within the State. Orders can then be transmitted and dealings had with it at this office, and the conduct of its business is thus transferred, in a measure at least, to the headquarters established within the territorial limits of this State. It thus settles within the State and enjoys the benefits incident to a domestic corporation, and the Legislature imposes requirements and obligations upon it by reason of the privilege conferred of doing business like a body corporate organized in this State." And again, at page 142: "The crucial test in doing business within the meaning of this statute is not an isolated transaction within the State or the transshipment of goods from the home office, pursuant to orders taken by drummers within the State, but it is the establishment of an agency or branch office within our State limits."

In New York Terra-Cotta Co. v. Williams, 102 App. Div. 1, 6, the learned referee who presided at the trial and whose opinion was adopted by the Appellate Division, says: "Doing business evidently means maintaining an office, having capital invested and carrying along a regular business of some kind."

In Thompson on Corporations (Vol. 6, § 7936), the learned author, in discussing the provisions of law which seek to regulate the conduct of foreign corporations within the State, remarks: "The general conclusion of the courts is, that isolated transactions, commercial or otherwise, tak-

ing place between a foreign corporation domiciled in one State, and citizens of another State, are not a doing or carrying on of business by the foreign corporation within the latter State, but that these prohibitions are leveled against the act of foreign corporations entering the domestic State by their agents and engaging in the general prosecution of their ordinary business therein."

But this contract was not made in the State of New York. An application was made by the defendant in Rochester, but no one in the city of Rochester, or in the State of New York, had any authority to accept the defendant as a student. The application was sent to the home office in Scranton; and, until it was there accepted by the plaintiff's officers, it was simply a proposal and nothing more. The contract was made in the State of Pennsylvania.

As the facts do not bring the case within the two essential requirements of the General Corporation Law, it necessarily follows that the plaintiff has a right to maintain an action upon the contract in question without having the required certificate from the Secretary of State, and the second defense considered alone necessarily fails.

The third defense presents questions of greater difficulty, and the determination of its merits necessarily involves the question whether the plaintiff is " doing business within the State," as section 181 of the Tax Law provides that every foreign corporation, except those of a specified character, authorized to do business under the General Corporation Law, shall pay a certain license fee to the State Treasurer for the privilege of carrying on its business in the State, to be computed in the manner therein specified. It further provides that no action shall be maintained or recovery had in any of the courts of the State by such foreign corporation without obtaining a receipt for the license fee within a certain specified time.

It is admitted that the plaintiff has neither paid the tax nor obtained the receipt, but it is claimed that, because the statute, by its terms, applied only to foreign corporations authorized to do business under the General Corporation

Law, it does not control the rights of the plaintiff, because the plaintiff has not received such authorization.

If this claim is true, the tax laws of the State need amendment. The contention simply is that a foreign corporation, by carefully refraining from making any contract within the State, may transact any amount of business within the State and escape not only its proper share of taxation, but may call upon the courts of the State to enforce its rights.

In the General Corporation Law, the Legislature has provided that no foreign stock corporation, other than a money corporation, shall do business in this State without having obtained a certificate that it has complied with all requirements of law to authorize it to do business within the State, and that the business of the corporation is such as may be lawfully carried on by domestic corporations.

In the Tax Law the Legislature has said, in effect, that a foreign corporation receiving the protection of our laws and the advantage of our trade shall not have an advantage over domestic corporations, but shall assume and pay its just portion of taxation.

These two statutes must be construed together, and in their interpretation effect must be given not only to their letter, but to their spirit.

In People ex rel. Twenty-third St. R. Co. v. Commissioners of Taxes, 95 N. Y. 554, the court lays down the principle that it is the general purpose of the statutes relating to assessments and taxation to secure an assessment upon all property, real and personal, and its actual value, and they must be construed and enforced with these purposes constantly in view, and that an intent to exempt any property or any portion of the value of any property must not be presumed, but must be found plainly expressed in the statutes.

The court in the case cited further says: "It is the object of all interpretation and construction of statutes to ascertain the intention of the law makers, and this is generally accomplished by a literal reading of the words used. But there are many cases where the words do not express

that intention perfectly, but exceed it or fall short of it, and then it is allowable to adopt what writers upon the civil law sometimes call a rational interpretation and to collect the intention from rational or probable conjecture only. It is also a rule sometimes laid down by text writers that whenever it happens that the sense of the law, how clear soever it may appear in the words, would lead to false consequences and unjust decisions, the palpable injustice which would follow from its literal sense compels an effort to discover some kind of interpretation, not what the law literally says, but what it means."

And again: "A construction of a statute which leads to an absurd consequence must always be avoided, as an absurd purpose is not to be attributed to the law makers."

In Peck v. Baldwin, 58 Hun, 308, the court lays down the principle that the exact and liberal wording of an act may sometimes be rejected if, upon the survey of the whole act and the purpose to be accomplished, or the wrong to be remedied, it is plain that such exact and literal rendering of the words would not carry out the legislative intent. To the same effect see Bell v. Mayor, 105 N. Y. 139, 144.

Can the plaintiff, by violating the General Corporation Law, take advantage of the Tax Law? We think not. It is clearly the intention of the Legislature that every foreign corporation doing business in the State shall pay a tax for the privilege of carrying on its business in the State, and that, until such tax is paid and a receipt therefor obtained, an action cannot be maintained in the courts of the State.

It is true that the contract was made in the State of Pennsylvania, where undoubtedly it is valid; but the parties contemplated that it should be performed in part at least in the State of New York, and the manner of its performance was a violation of the laws of the State, unless the plaintiff should procure the certificate required by the General Corporation Law. Wood v. Ball, 190 N. Y. 217.

It is further claimed that neither sections 15 and 16 of the General Corporation Law, nor section 181 of the Tax Law, applies to the plaintiff, because each and every act

performed by it in this State is an act of interstate commerce or purely incidental thereto, and that, therefore, it is not subject to the control of the State, but only of the Federal Congress.

The attention of the court has been called to several cases in which the plaintiff here was a party, in which it is claimed that the courts have held that plaintiff's business constitutes commerce between the States, but, from an outline of the facts and decisions in counsel's brief, it does not appear that these decisions are controlling in considering the questions before us.

In People ex rel. S. C. O. Co. v. Wemple, 131 N. Y. 64, it appears that the relator was a corporation organized under the laws of New Jersey. The Comptroller of the State fixed and determined the amount of taxes due the State upon the basis of the amount of capital stock employed within the State. The claim was made that the corporation should not pay taxes for the reason that it was engaged in interstate commerce and, therefore, was subject alone to the control of the Federal authorities. The court says: "If a foreign corporation or a corporation created by the laws of a sister state employs the whole or a portion of its capital here, and thus has the benefit and protection of the government and laws of the state to the extent of the capital so employed, there is no reason why it should not be subjected to the extent of the capital so employed, to the same burdens and obligations as a domestic corporation. The tax is not imposed upon its property, but for the privilege which is extended to it by the state of doing business here as a corporation and in its corporate name. Since the statute has been amended so as to make the amount of capital used in this state the basis of the tax, the amount of business transacted here is of much less importance than formerly. If but a very small part of the corporate business is done here and but a small part of the capital employed here, then the tax is correspondingly light. * * * The statute under which the tax in question was imposed is not in conflict with the provisions of the Federal Constitution, which confers upon

Court of Claims, March, 1910.          [Vol. 67.

congress the exclusive power to regulate commerce between the states. * * * The state has the power to exclude corporations of other states from doing business within its jurisdiction. If, however, it permits them to come here and transact their business, it may impose a tax upon them for this privilege, and this is not a regulation by the state of interstate commerce, but a lawful exercise of the power of taxation upon corporate bodies that for the time being are within its jurisdiction for that purpose."

It follows from the views expressed that the judgment of the Municipal Court should be affirmed.

Judgment affirmed, with costs.