PARSONS-WILLIS LUMBER CO. v. STUART.

(Circuit Court of Appeals, Fifth Circuit. November 5, 1910.)

No. 2,142.

1. COMMERCE (§ 12*)—FOREIGN CORPORATIONS—POWER OF STATE TO REGULATE.

Among the exceptions to the rule that the right of a foreign corporation to do business in another state depends entirely on the will of the latter is where such business constitutes interstate commerce, and is therefore under the paramount authority of Congress.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 7, 9; Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COMMERCE (§ 46*)—CORPORATIONS (§ 642*)—REGULATION OF FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.

A contract made in Kentucky by a Kentucky corporation for the purchase of lumber to be sawed and delivered for shipment in Alabama relates to interstate commerce, nor does its execution constitute a doing of business in Alabama by such corporation which makes it subject to the provisions of the law of that state relating to foreign corporations doing business therein.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 100; Dec. Dig. § 46;* Corporations, Cent. Dig. §§ 2520, 2524; Dec. Dig. § 642.*

Foreign corporations "doing business" in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

Appeal from the District Court of the United States for the Middle District of Alabama.

In the matter of the Conecuh Pine Lumber & Manufacturing Company, bankrupt. Appeal by the Parsons-Willis Lumber Company from an order of the District Court disallowing its claim. Reversed.

The appeal in this case is taken from the decree of the District Court for the Middle District of Alabama, confirming the order of the referee in bankruptcy, disallowing entirely and expunging the claim of Parsons-Willis Lumber Company against the bankrupt estate of the Conecuh Pine Lumber & Manufacturing Company. The only question presented is the correctness of the decree disallowing said claim. The sole ground upon which the claim was disallowed was that the claim was not enforceable against the bankrupt (an Alabama corporation), for the reason that the contract out of which it grew constituted the doing of business in the state of Alabama by the appellant, a foreign corporation, without having first complied with the Constitution and laws of the state of Alabama authorizing it to do business in the state of Alabama. The evidence is practically without conflict, and shows the following state of facts:

The appellant is a corporation organized under the laws of the state of Kentucky; the purposes for which it was organized being the manufacturing and dealing in lumber, shingles, building materials, or articles usually sold in connection therewith, and to act as agents or brokers on commission in said business, with power to take and hold real estate for debts or business purposes. The bankrupt was a corporation organized and existing under the laws of the state of Alabama. On the 21st day of June, 1905, the appellant and the bankrupt entered into a contract, substantially as follows: This agreement made and entered into this 21st day of June, 1905, by and between the Conecuh Pine Lumber & Manufacturing Company, principal, and R. N. Chestnutt, surety, of Montgomery, Alabama, parties of the first part, and the Parsons-Willis Lumber Company, incorporated, of Louisville, Kentucky, party of the second part: Witnesseth: That whereas, the said lumber company of the first part has by contract dated November 4th, 1904, and continuing for five years next thereafter, purchased of H. T. Simms of Elmore county, Alabama, all the lumber to be cut by his mill or mills from any and all timber on the J. D. & M. E. Roy lands, the E. M. Cowling lands and the Elmore lands, in Elmore and Autauga counties, Alabama, and any other lands that may be owned or controlled by said Simms, or that he may be possessed of or hereafter become controller of, in said counties, during the life of said contract, and whereas said lumber company proposes to sell to the second party a part of the output of said mill or mills, bought of said Simms as aforesaid: Now, therefore, this agreement witnesseth that for and in consideration of ten thousand & no/100 ($10,000.00) dollars cash in hand paid and the promissory note of the second party of even date herewith for the sum of five thousand and no/100 ($5,000.00) dollars payable four months after date to the order of the Conecuh Pine Lumber & Manufacturing Company, at the Southern National Bank, Louisville, Kentucky, with interest from maturity until paid, and the further

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreement of the second party that after the receipt by it under this contract of lumber of the contract value of fifteen thousand & no/100 ($15,000.00) dollars, it will at the end of each current month thereafter settle for the lumber delivered to it during said month either in cash less two per cent. (2%) or by (sixty day) notes at its option, the said settlements to be continued until this contract is filled.

The parties of the first part agree and bind themselves as follows:

"Stipulation 1. To sell and they do hereby sell and promise to deliver to the second party three million feet (3,000,000) of sound and square edge pine. lumber, taken from the said lands of H. T. Simms and sawed by his said mill or mills of sizes and lengths as ordered by the second party at prices as follows, f. o. b. cars Elmore, Ala.: * * *

"Stipulation 2. The first parties agree to stack on sticks to dry, surfaced or dressed on two or four sides, so much of the stock sawed for the second party as may be ordered, by the second party, and upon the second party's order load same f. o. b. cars, after being seasoned, at one & no/100 ($1.00) dollars less per thousand feet than the prices enumerated in stipulation number one, provided parties of the first part are notified of such stock that is intended to be shipped in the rough after being put on sticks to dry."

"Stipulation 4. The first parties agree to saw and dress green lumber and load f. o. b. cars so much stock as may be ordered by second party at fifty cents ($.50) less per thousand feet than in stipulation number one if not stacked.

"Stipulation 5. The first parties agree to saw and deliver f. o. b. cars, without stacking, green lumber in the rough, of sizes and lengths as in stipulation number one, as ordered by second party at one & 50/100 ($1.50) dollars per thousand feet less than the prices enumerated in said stipulation number one.

"Stipulation 6. First parties agree to begin the delivery of said lumber by the 26th day of June, 1905, and to deliver at the rate of three or more (at the option of the second party) carloads per week until the number of feet contracted for herein is delivered. It is understood and agreed that no surfaced stock will be shipped earlier than July 15th, 1905, and it is further understood and agreed that no surfaced timber larger than 8x14 are expected to be furnished under this contract.

"(a) It is mutually agreed that the lumber when ordered stacked shall be stacked in the yards of the mill or mills of H. T. Simms, and when so stacked the title and possession shall thereby vest in the second party, but subject to the duty of the first party to load on cars when ordered by second party.

"(b) It is further agreed that upon failure of the first parties to deliver as ordered by second parties, as herein provided, whether from unforeseen accident or otherwise for a period longer than two weeks, the payment or maturity of any notes theretofore executed for a period, equal to the time such suspension of delivery continued."

This contract was executed in Louisville, Ky. It was signed at that place by both parties thereto, and also by one R. M. Chestnutt as surety for the bankrupt. The money which was paid·under the contract was paid in Louisville, Ky., and the note provided for in the contract was there executed and delivered to the bankrupt. The terms of the contract were agreed upon in Louisville, Ky., and no action by either party in reference to the execution of the contract took place in the state of Alabama.

It is out of this contract that the claim of appellant against the bankrupt arises, and it is this contract which the court below holds constitutes a contract upon the part of appellant to do business in Alabama, and is therefore unenforceable.

Phares Coleman and Lee H. Weil, for appellant.

Leon Weil, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge (after stating the facts as above). "The principle that the right of a foreign corporation to engage in

business within a state other than that of its creation, depends solely upon the will of such other state, has been long settled." Among the exceptions to this rule is, where the business of the foreign corporation constitutes interstate commerce, and is, therefore, solely within the paramount authority of Congress. Hooper v. California, 155 U. S. 652, 15 Sup. Ct. 207, 39 L. Ed. 297. A foreign corporation has the right to sell articles of commerce anywhere in Alabama, and to ship them to the purchasers, and any attempt to interfere with such business would be an interference with interstate commerce. Nelms v. Edinburg-American Land Mortg. Co., 92 Ala. 161, 9 South, 141. The converse of the proposition must also be true, namely, that a foreign corporation may buy, or make a contract with a citizen of Alabama to buy, articles of commerce—subjects of trade and barter offered in the market. Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 South. 136. "The making of a contract in Colorado to manufacture certain machinery in Ohio, to be delivered for transportation to the purchasers in Colorado, was commerce, and within the exclusive jurisdiction of Congress." Cooper Manfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137. In Robbins v. Shelby County Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694, it was held "that business of selling goods which were in Ohio at the time of sale, and were, at a future time, to be delivered to the purchaser in the state of Tennessee, constituted interstate commerce." We can perceive no difference in manufacturing and selling machinery by a manufacturer in Ohio for, and to be delivered for transportation to, a purchaser in Colorado, and in manufacturing and selling lumber in Alabama to a purchaser in Kentucky, or lumber to be shipped by the seller on orders of the purchaser to Kentucky, or to any other point outside the state of Alabama.

However this may be, the contract involved in this case was not made in Alabama, but was made in Kentucky. It did not provide for the doing by the purchaser (appellant here) of anything in Alabama which constituted the doing of business in that state; and the evidence fails to show that in carrying out the contract the appellant did anything in Alabama which constituted the doing of business within the meaning, or violative of the laws of the state. There is no presumption that the parties made an illegal contract, or contemplated an illegal transaction. No lumber was sold by the purchaser in this case and shipped on his order to any point in Alabama until several months subsequent to the making of the contract, and subsequent to his compliance with the laws in reference to doing business in the state by foreign corporations. Shipments were frequently made to points out of the state prior to such compliance, but we find no evidence that lumber was stored and kept on hand for sale in Alabama. Lumber, under the terms of the contract, was in some instances stacked to dry out before shipment, and when ordered shipped was loaded by the seller (Conecuh Pine Lumber & Manfg. Co.) f. o. b. cars, in accordance with the contract. Such transactions are constantly taking place in this state, as, for instance, the manufacture and sale by cotton mills of their product to foreign corporations; also like transactions in lumber and

naval stores. We do not think it can be justly contended that the purchasers are amenable to the laws of the state invoked in this case.

But it is contended here that the appellant had an agent in Alabama, who inspected the lumber that was manufactured and stacked by the seller, and that this was doing or transacting business in this state within the meaning of its said laws. We cannot agree with this contention. There was no provision in the contract in reference to said inspection, but there was a stipulation as to sizes, lengths, and prices of the lumber contracted for, and it may well be that the purchaser, as incidental to his contract, desired to have the lumber which he was receiving under his purchase inspected by his agent that he might be duly advised if the sizes, lengths, etc., were coming up to the stipulations of his contract.

We think the court below erred in holding the contract unenforceable, and in disallowing the claim of the appellant against the bankrupt. The decree appealed from is reversed and the cause remanded with instructions to allow appellant's claim.