DIXIE COTTON FELT MATTRESS CO. et al. v. STEARNS & FOSTER CO.

(Circuit Court of Appeals, Seventh Circuit. January 10, 1911.)

No. 1,725.

1. TRADE-MARKS AND TRADE-NAMES (§ 25½,* New, vol. 6, Key No. Series)— NAMES SUBJECTS OF OWNERSHIP—NAMES INDICATING BOTH ORIGIN AND QUALITY.
    A manufacturer of a class of goods of different grades may use different trade-names, each of which indicates origin and ownership, and at the same time a particular grade of his goods.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—"DOING BUSINESS IN THE STATE"—EVIDENCE.

Evidence that a manufacturing corporation of another state maintains a warehouse in Chicago, advertised as a "salesroom." where it stores goods before sale, and from which deliveries are made. but which does not go to the extent of showing that any sales are made there, or at any other place than at the home office of the company, is not sufficient to show that it is "doing business" in Illinois, within the meaning of the statute of that state (Hurd's Rev. St. Ill. c. 32, § 67g) prohibiting foreign corporations "doing business in the state" from maintaining actions therein unless they comply with its requirements.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswicke-Balke-Collender Co., 72 C. C. A. 622.]

3. TRADE-MARKS AND TRADE-NAMES (§ 75*)—INFRINGEMENT—UNFAIR COMPETITION.

Complainant was a manufacturer of mattresses of different grades, each of which was extensively advertised and sold under a trade-name. Defendant made and sold mattresses of inferior material, but marked with the same names as complainant's to a large store which had previously sold complainant's. Defendant also furnished for display in the store windows sample mattresses of the same quality as complainant's, which were cut open to show the material. *Held.* that the purpose was clearly to deceive purchasers into buying such goods as complainant's, and that it was entitled to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*

Unfair competition in use of trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Stearns & Foster Company against the Dixie Cotton Felt Mattress Company and the Boston Store of Chicago. From an order granting a preliminary injunction, defendants appeal. Affirmed.

The appeal is from an interlocutory decree, enjoining the appellants, their officers, agents, servants, etc., from using the words "Lenox," "Windsor" or "Anchor" as a trade mark for mattresses and from making, using, or vending any mattresses having affixed to them said trade marks, and from using any of said names in connection with the manufacture and sale of mattresses until the final hearing and disposition of the case.

The facts appear in the opinion.

Frank F. Reed, Hamilton Moses, Fred A. Bangs, and Edward S. Rogers, for appellants.

Edward Rector and Alfred M. Allen, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion.

The appellee is an Ohio corporation, and the appellants are corporations under the laws of Illinois. The bill, and the amended bill, are to restrain the infringement of trade names and unfair competition in trade.

Appellee, beginning as a copartnership in 1848, and incorporating in 1883, has, from the beginning of its business, been engaged in the manufacture of cotton batting and wadding, and for ten years before the filing of the bill was extensively engaged in the manufacture and sale of cotton felt mattresses for beds. On these mattresses—affixing the names to different grades—the trade marks "Lenox," "Windsor" and "Anchor" were adopted, the mattresses under these names having been extensively advertised to the public. More than 150,000 of these mattresses were sold each year at the time of the filing of the bill.

The appellant, the Dixie Cotton Felt Mattress Company, was organized in 1907 with a capital stock of $2,500, since which time it has been engaged in the manufacture of mattresses at Chicago, in competition with appellee in the Chicago trade. The record shows that this appellant was entirely familiar with appellee's business, as also its mattresses and trade marks. Indeed, samples of appellee's mattresses were brought to the plant of the Dixie Cotton Felt Mattress Company and cut open and examined, for the purpose of finding out the quality of its cotton and the character of its work, in order that the Dixie Company might make up similar mattresses to sell in competition.

The appellant, the Boston Store of Chicago, until a short time prior to the filing of the bill, was a customer of appellee, selling appellee's mattresses bearing their trade names, and remained such customer until about October, 1909, when, entering into an arrangement with the Dixie Company, it put 200 mattresses of the Dixie Company on sale in its store, bearing appellee's trade names. Accompanying this consignment of mattresses, were some small model mattresses, having their ends cut off to expose the cotton, which was branded with appellee's trade names—the cotton in these models being of a high grade and comparing with the cotton, respectively, in appellee's mattresses, but the cotton in the mattresses being of a low grade, and greatly inferior to either appellee's mattresses or appellants' models.

While there is no affirmative evidence of any misrepresentation upon the part of appellants, or either of them, respecting these mattresses being appellee's goods, unquestionably the purpose of appellants, both by use of the models and of appellee's trade names, was to create such an appearance, that persons acquainted with appellee's mattresses would believe that the mattresses they were obtaining at the Boston Store, at reduced prices, were the same mattresses that appellee had been manufacturing and selling. There could have been no other motive for the use of these names, and the construction and arrangement of these models.

Appellants contend, however, that whether this bill be one of infringement of trade names, or unfair competition, it cannot be maintained unless it be shown that the trade names used were intended to

and did indicate the origin and ownership of the product. In this we concur. But appellants contend further, that the trade names involved were intended to be used only, and did indicate only, the quality or grade of the goods, and that a trader can lawfully have but a single trade mark for goods of the same kind. In neither of these propositions—the one of fact and the other of law—do we concur. The fact that three names were used is of no significance, either in determining the fact or the law—each name being attached to a different character of mattress. If appellee, manufacturing but one mattress, had applied the trade name "Lenox" to its mattress, and some one else, manufacturing but one mattress of a different grade, had used the trade name "Windsor," and still some other person, manufacturing but one mattress of a still different grade, had used the trade name "Anchor," each bringing to the attention of the Court below substantially the same evidence as is found in this record, to support the contention that the names, respectively, were intended to be used and were used to indicate origin and ownership, the Court below, in our opinion, on the evidence offered, would have had sufficient evidence to support, in each instance, an interlocutory decree like the one entered. Now, suppose that instead of this evidence being introduced by the three manufacturers independently, it had been shown that appellee, at some time or other, purchased the other two manufacturers' factories, with their good will and trade names, and had continued the business, could not appellee have asked for and obtained the same equitable protection that, under the other circumstances, the three manufacturers individually could have asked for and obtained? We see no reason why, either in the law as laid down, or in any commercial considerations applying to this case, appellee's standing equitably should be different. We see no reason why, to the extent that appellee has gone in this case, a single manufacturer may not obtain trade names indicating origin and ownership at the same time that they indicate the different kinds of mattresses put upon the market. And the evidence satisfies us that, in addition to the indication of grade, appellee intended these names to indicate origin and ownership. Indeed, origin and ownership was the main consideration, it seems to us, in the mind of appellee.

Appellants further contend that appellee, being a foreign corporation, has not complied with the Illinois act regulating the admission of foreign corporations to do business, and is therefore precluded from maintaining this suit by reason of Section 6 of the Illinois act (Hurd's Rev. St. 1909, c. 32, § 67g), the applicable portion of which is as follows:

"And in addition to such penalty, if after this act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this State."

Incapacity to sue is a defense that must be made out by the defendants. All that is proven in this case is that appellee's business house is at Cincinnati, and that it has warehouses all over the country, including one in Chicago, the one in Chicago being advertised as a "salesroom." But there is nothing in this proof that excludes the fact

that all the sales made by appellee may have been made from Cincinnati, the warehouse here being used simply as a place from which to make deliveries; and as long as that fact is not excluded by the party on whom rests the burden of proof, it must be accepted as one of the facts to which the proposition of law is to be applied.

The statute of Illinois is directed against corporations "doing business" in this State in contravention of the act. The purchase and sale of goods at Cincinnati, in the state of Ohio, to be shipped into Illinois, is not "doing business" in Illinois. Havens, etc., Co. v. Diamond, 93 Ill. App. 557; March-Davis Cycle Mfg. Co. v. Strobridge Lithographing Co., 79 Ill. App. 683; Rock Island Plow Co. v. Peterson, 93 Minn. 356, 101 N. W. 616. Neither, in our opinion, is the purchase and sale of goods at Cincinnati, in the State of Ohio, to be delivered to somebody in Illinois from goods already deposited in a warehouse in Illinois for that purpose, "doing business" in Illinois, within the meaning of the statute; for, in the one instance as much as in the other, the transaction is not an Illinois transaction, but an interstate transaction—something clearly within interstate commerce. And while the State of Illinois has the right to regulate the terms upon which foreign corporations shall do business in that State, it has no right to regulate, or in any way burden, interstate commerce; and we will not assume, in the absence of the clearest expressions to that end, that a State intends to do that, in its statute, which it may not constitutionally do under the constitution of the United States.

The decree appealed from is affirmed.