Submitted on briefs January 12, reversed and remanded February 1, 1921.

## MAJOR CREEK LUM. CO. *v.* JOHNSON.

(195 Pac. 177.)

**Corporations—Foreign Corporation not Complying With Statute cannot Sue.**

1. Foreign corporation not complying with requirements of Section 6908, Or. L., will not be permitted to sue in the state to enforce a contract or for the breach thereof made with the view of conducting business in the state or while transacting such business therein.

Corporations—Exacting Trust Deed to Obtain Funds for Carrying on Business in Another State not "Doing Business" in Such State.

2. Execution by a foreign corporation in the state of a trust deed to raise funds to carry on ordinary business in a foreign state *held* not the doing of business within the state within the meaning of Section 6908, Or. L., requiring foreign corporations to do certain things before doing business in the state.

Corporations—Contracts Made and to be Performed in Another State not Doing of Business in Such State.

3. Section 6908, Or. L., requiring foreign corporations to comply with certain conditions before engaging in business within the state, has no application to the contract of a foreign corporation made, and so far as its obligations are concerned to be performed, in another state.

Corporations—Mere Employment of Agent not "Doing Business" Within State.

4. The mere employment of an agent to transact the corporation's business is not doing business within the meaning of Section 6908, Or. L., requiring foreign corporations to comply with certain conditions before engaging in business within the state.

Corporations—Meeting of Trustees of Corporation in State not "Doing of Business."

5. Act of trustees of a foreign corporation meeting in a hotel or dwelling-house in the state is not the doing of business within the state within the meaning of Section 6908, Or. L., requiring such corporations to comply with certain conditions before engaging in business within the state.

Commerce—Corporations—State may Regulate Terms of Doing of Business in State, but cannot Interfere With Interstate Commerce.

6. The state has the right to regulate the terms upon which foreign corporations shall do business within its borders, but the right of Congress under Const. U. S., Article I, Section 8, to regulate commerce among the several states cannot be impaired.

Constitutional Law—Statute Given Construction Which will Render It Constitutional.

7. It will not be assumed, in the absence of the clearest expression to that end, that a state intends to do that by a statute which it may not do constitutionally.

---

2. What constitutes "doing business" in state by foreign corporation, see notes in 2 Ann. Cas. 307; 8 Ann. Cas. 942; 11 Ann. Cas. 320; Ann. Cas. 1912A, 553; Ann. Cas. 1913E, 1154.

3. Effect upon contracts of foreign corporation of its non-compliance with domestic statutes, see notes in 2 Ann. Cas. 63; 13 Ann. Cas. 512; Ann. Cas. 1914A, 702; 24 L. R. A. 315; 1 L. R. A. (N. S.) 1041.

**Corporations—Employment of Broker to Distribute Funds from Proceeds of Sale of Lumber not "Doing of Business" in State.**

8. That brokers within the state are employed by a foreign corporation to distribute funds received by them from the proceeds of the sale of lumber, in payment for work done in cutting the timber and manufacturing the lumber in this state, does not constitute doing of business in the state within the meaning of Section 6908, Or. L., requiring foreign corporations to comply with certain conditions before engaging in business within the state.

**Corporations—Asking Aid of Courts not "Doing of Business" in State.**

9. The asking of aid of the courts of the state to enforce contracts that relate to legitimate business to be done in other states, and that are not prohibited by the laws of the state, does not constitute the doing of business within the state within the meaning of Section 6908, Or. L., requiring foreign corporations to comply with certain conditions before engaging in business within the state.

**Corporations—Contract With Brokers to Dispose of Product not "Doing of Business" in State.**

10. A contract with brokers in which the latter were to sell products of a foreign corporation's mill produced in the State of Washington which were shipped to other states or countries had to do with interstate commerce, and did not constitute the doing of business in the state within the meaning of Section 6908, Or. L., requiring foreign corporations to comply with certain conditions before doing business within the state.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.

This is an action to recover damages for breach of a contract to deliver logs to plaintiff, a Washington corporation, at Dorr, Klickitat County, Washington. Defendants interposed a plea in abatement, alleging that plaintiff was transacting business in the State of Oregon without first complying with the statutory requirements regulating foreign corporations. Before any testimony was taken in support of this plea, plaintiff objected to the introduction of any evidence, on the ground that the plea did not state facts sufficient to constitute matter in abatement. This motion was overruled by the court. Plaintiff's objection to this plea is directed to the allegation that plaintiff "was and still is engaged in the transacting

of business in the State of Oregon.'' After this
motion was overruled the defendants offered evi-
dence in support of their plea.  The court made its
findings of fact, concluding therefrom that plaintiff
was, during the time mentioned in the pleadings, en-
gaged in the transaction of business in Oregon, and
that it was not entitled to maintain this action.  The
court rendered judgment dismissing the action with-
out prejudice.  Plaintiff  appeals.

REVERSED AND REMANDED.

For appellant there was a brief submitted over
the names of *Messrs. Huston & Meacham.*

For respondents there was a brief prepared and
presented by *Mr. B. G. Skulason* and *Mr. W. E.
Critchlow.*

BEAN, J.—Plaintiff's first assignment of error
relates to the overruling of the motion to reject the
evidence on account of the insufficiency of the plea
in abatement.  The  facts set  forth in the plea in
abatement are very general and might be termed
a conclusion of fact.  It is not indicated in any way
what kind of business the plaintiff was transacting
in the State of Oregon, so that plaintiff could pre-
pare a defense.  Neither could the court determine
therefrom whether the business alleged to have been
transacted was  interstate  or  intrastate  commerce.
All of the facts relating to the transactions of plain-
tiff within the state are set forth in the findings of
the court. . In view of the fact that no demurrer
or motion was directed to the plea in abatement,
we are inclined to notice the facts without deciding
as to the sufficiency of the plea, as sooner or later
such questions may come before the court in any

event. The other assignments of error challenge the correctness of the court's conclusions from the facts found and the consequent judgment dismissing the action.

It appears that the business in which the plaintiff corporation proposed to engage and did not engage in was the cutting of timber and manufacturing the same into lumber at its mill and selling and shipping it for sale, all to be done in the State of Washington, except that the major part of the products of the mill was shipped and sold in states other than Washington and Oregon. None of the lumber was sold in the State of Oregon. The first transaction on the part of plaintiff was the execution and delivery of a trust deed on February 1, 1916, at Portland, Oregon, to the Portland Trust Company of Oregon, of all of the assets of plaintiff in the State of Washington, as security for a bond issue of $50,000, in order to obtain credit or funds to carry on plaintiff's business of manufacturing, selling, and shipping lumber in the State of Washington.

The other transactions which are claimed to constitute doing business in the State of Oregon can better be stated in a narrative form. In February, 1918, Bryan R. Dorr, the president of the plaintiff corporation came from Dorr, Washington, to Portland, Oregon, and engaged rooms at the Multnomah Hotel, for the purpose of facilitating negotiations relative to securing three interdependent contracts with the object of cutting and delivering logs in the mill-pond of the plaintiff at Dorr, Washington, and the execution of contracts for the purchase of necessary timber adjacent to plaintiff's mill and the operation of the sawmill, by manufacturing lumber, and the sale of the lumber through a broker, on a com-

mission basis. Pursuant to such negotiations, at Portland, Oregon, on March 3, 1918, plaintiff entered into a contract with defendants whereby defendants agreed to cut and deliver logs at plaintiff's mill at Dorr, Washington. On March 30, 1918, plaintiff contracted with G. W. Gates & Company, lumber brokers, to handle the output of plaintiff's mill at Dorr, Washington, on a commission basis, G. W. Gates & Company to advance such funds as might be necessary for the purchase of timber, and the manufacture of logs into merchantable lumber, and to distribute the funds received from the proceeds of such sales to the parties who performed the labor, less a commission to G. W. Gates & Company. On April 3, 1918, in the State of Oregon, plaintiff contracted with John Peterson to manufacture the logs into lumber at plaintiff's sawmill in Dorr, Washington, and to load and ship the lumber upon orders provided by G. W. Gates & Company. In order to authorize the execution of the contracts, the board of trustees of plaintiff, which was comprised of three members of the Dorr family, passed resolutions of the corporation in Portland, Oregon. The president also wrote letters from Portland, Oregon, to different places relating to the lumber business at Dorr, Washington. Soon after the contracts were signed the plaintiff abandoned its office in the State of Washington, which was maintained in a dwelling-house near the mill, in order that one of the contractors might live in the house, and shipped all of its books and records, except the minute-book and one book of stock certificates, to New York City, with the intention of thereafter carrying on business from New York City through a firm of brokers.

The court found the facts in detail substantially as stated above.

Section 6908, Or. L., provides:

"Every foreign corporation, and every foreign joint-stock company or association, before transacting business within this state, shall file the declaration and pay the entrance fees [hereinafter] provided, and shall duly execute and acknowledge a power of attorney and cause the same to be recorded in the office of the Corporation Commissioner, which power of attorney shall be irrevocable, except by the substitution of another qualified person for the one mentioned therein as attorney in fact. * * It shall be the duty of every such foreign corporation, joint-stock company or association to maintain at all times within this state, some qualified person as its attorney in fact, as herein provided, and in default thereof it shall not be entitled to transact any business within this state or maintain any suit, action or proceeding in its courts."

It is contended by counsel for plaintiff that the transactions of plaintiff within this state do not constitute "doing business" within the State of Oregon, within the meaning of the statute.

1. Foreign corporations not complying with the prescribed statutory prerequisites for doing business and maintaining suits or actions in the State of Oregon, will not be permitted to sue in this state to enforce a contract, or for the breach thereof, made with the view of conducting business in this state, or while transacting such business therein. This is practically unquestioned: *Cyclo Mining Co.* v. *Baker Light & Power Co.* (C. C.), 165 Fed. 996. However, it is not every transaction of business consummated within the State of Oregon that constitutes doing business in the state, according to the purport of the statute.

2. We first notice the execution of the trust deed. In considering the matter, the usual and ordinary business of the corporation should be kept in mind. It was an isolated act of business by the Washington corporation, and did not indicate a purpose on the part of the corporation to carry on its ordinary business in the State of Oregon. It was an incidental transaction for the purpose of obtaining credit or funds, with the object of carrying on its avowed and ordinary business of manufacturing lumber in the State of Washington, and did not come within the pale of the statute in regard to ''doing business'' within this state: *La Moine Lumber & Trading Co.* v. *Kesterson,* 171 Fed. 980; *Commercial Bank* v. *Sherman,* 28 Or. 573 (43 Pac. 658, 52 Am. St. Rep. 811); *Simons-Burke Clothing Co.* v. *Linton,* 90 Ark. 73, 76 (117 S. W. 776); *Union Trust Co.* v. *Sickels,* 125 App. Div. 105 (109 N. Y. Supp. 262); *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727 (28 L. Ed. 1139, 5 Sup. Ct. Rep. 739, see, also, Rose's U. S. Notes); 12 R. C. L., pp. 69, 72, §§ 48, 49; 2 Ann. Cas. 307, note; 11 Ann. Cas. 321, note. The physical presence of Mr. Dorr, an officer of the Washington corporation, in this state, though about the business of the corporation, was not doing business in this state: *Ladd Metals Co.* v. *Am. Mining Co.* (C. C.), 152 Fed. 1012. Our statute does not prohibit the bringing of an action by a foreign corporation not complying with the statutory requirements upon all contracts, but only upon such contracts as are made with the view to the conduct of, and while transacting, business in Oregon: Section 6908, Or. L.; *La Moine etc.* v. *Kesterson* (C. C.), 171 Fed. 980. It has been held that a visit to the state by the president of a foreign corporation for the purpose of settling

a claim for damages was not doing business within the state, so as to validate process served upon him: *Hoyt* v. *Ogden Portland Cement Co.* (C. C.), 185 Fed. 899.

Apparently it was not the purpose for which the plaintiff corporation was organized, to sell bonds. It may be empowered to do so as incidental to its lumber business, and to execute a mortgage to secure the same. Such powers are to be exercised in subordination to the main purpose of the lumber company. It was a means to enable it to accomplish its purpose of manufacturing and selling lumber. A distinction should be drawn between the purposes of a corporation and its powers: *General Conference of Free Baptists* v. *Berkey,* 156 Cal. 466 (105 Pac. 411); *Floyd* v. *Perrin,* 30 S. C. 1, 12 (8 S. E. 14, 2 L. R. A. 242); note, Ann. Cas. 1912A, p. 544, where we also find the note:

"A contract made in the state by a foreign corporation for the sale of its capital stock or bonds is not a part of the business the corporation was organized to conduct, and hence does not constitute doing business"—citing cases.

It has also been held that the making of a single contract within the state does not constitute doing business therein: *Hirshfield* v. *McCullach,* 64 Or. 502, 512 (127 Pac. 541, 130 Pac. 1131); 76 Cent. L. J. 55; *People's Sav. Bank* v. *Fulton Contracting Co.* (Sup.), 119 N. Y. Supp. 622. Taking a note and mortgage to evidence and secure a debt is within this rule: *Goode* v. *Colorado Invest. Loan Co.,* 16 N. M. 461 (117 Pac. 856). But the doing of even a single act of business which pertains to the ordinary business and purposes of the corporation, as distinguished from an act within its powers, is prohibited accord-

ing to the construction placed by some courts upon a statute prescribing the conditions to be complied with by foreign corporations: *Alabama Western Ry. Co.* v. *Talley-Bates Const. Co.,* 162 Ala. 396 (50 South. 341); *Thompson* v. *Iowa State Traveling Men's Assn.,* 88 Neb. 399 (129 N. W. 529); *Deere Plow Co.* v. *Wyland,* 69 Kan. 255 (76 Pac. 863, 2 Ann. Cas. 304); note, Ann. Cas. 1912A, p. 553..

3. Our statute requiring foreign corporations to comply with certain conditions before engaging in business within the State of Oregon has no application to the contract of a foreign corporation made, and so far as its obligations are concerned to be performed, in another state. All of the contracts executed by the plaintiff company for cutting timber, manufacturing the same, and shipping the products were to be performed in the State of Washington, and the statute does not apply thereto: Ann. Cas. 1914A, 709; *Parsons-Willis Lumber Co.* v. *Stuart,* 182 Fed. 779 (105 C. C. A. 211); *Sloss-Sheffield Steel & Iron Co.* v. *Tacony Iron Co.* (C. C.), 183 Fed. 645; *Falaenau* v. *Reliance Steel Foundry Co.,* 74 N. J. Eq. 325 (69 Atl. 1098); *International Textbook Co.* v. *Connelly,* 67 Misc. Rep. 49 (124 N. Y. Supp. 603); *American Food Products Co.* v. *American Milling Co.,* 151 Wis. 385 (138 N. W. 1123); *Securities Development Corp.* v. *Brethour,* 20 Ont. W. Rep. 562 (3 Ont. W. N. 250).

4. Two years elapsed after the execution of the trust deed, when Mr. Bryan R. Dorr, president of the defendant corporation, visited at the Multnomah Hotel in the City of Portland, and the corporation executed the contracts for cutting and manufacturing lumber in the State of Washington. After that the lumbering business in Washington appears to

have been carried on through the plaintiff's contractors or servants. The making of the contract with the defendants for such work was of much the same nature as the employment of an agent. The defendant contractors were in fact to act as the agents or servants of the plaintiff in cutting its lumber, and the same may be said of John Peterson, with whom plaintiff negotiated and contracted to manufacture the logs into lumber at its mill in the State of Washington, and to load and ship the lumber upon orders. The fact that the accommodations at the Multnomah Hotel in the City of Portland were more agreeable to the president of the corporation than the dwelling in or near the timber in Washington may be left out of the case. The mere employment of an agent to transact the company's business is not doing business within the meaning of the statute: *Verdigris etc. Co.* v. *Stanfield,* 25 Okl. 265 (105 Pac. 337); note, Ann. Cas. 1912A, p. 556.

5. The plaintiff lumber company appears to have had no regular "office" in the ordinary sense of the word. The board of trustees transacted their business in a dwelling-house, or some such place. The act of the trustees of the plaintiff, meeting in a hotel or dwelling-house in this state, where it is not domiciled, was not transacting business in this state within the meaning of the statute: *Honeyman* v. *Colorado Fuel & Iron Co.* (C. C.), 133 Fed. 96, 99, which quotes from the opinion in the case of *People ex rel. Dives-Pelican Co.* v. *Feitner,* 77 App. Div. 189 (78 N. Y. Supp. 1017), as follows:

"This corporation was not doing business in the State of New York in the sense in which that term is used in the statute. The fact that it had an office here, and was authorized to do business, did not

make it 'doing business.' The office which it had here was used simply for the purpose of enabling the directors to meet in it and declare dividends upon its preferred stock, and the cash on hand and money in ba· ` are for the purpose of paying such dividends when declared. This is all the business it did in the State of New York, and this clearly did not bring it within the statutes making it liable to taxation.''

6, 7. The contract and all of the arrangements with G. W. Gates & Company pertain strictly to interstate commerce. They were to act as brokers in selling the products of the plaintiff's mill, produced in the State of Washington, which were shipped to other states or countries. It is not shown that any of the lumber was shipped to or sold in the State of Oregon. This state has the right to regulate the terms upon which foreign corporations shall do business within its borders; yet the right of Congress under Article I of Section 8 of the federal Constitution to ''regulate commerce among the several states'' cannot be impaired by such regulations. The right of a state to regulate or in any way burden interstate commerce is denied by the federal Constitution: *La Moine Lumber & Trading Co.* v. *Kesterson* (C. C.), 171 Fed. 980. It will not be assumed, in the absence of the clearest expressions to that end, that a state intends to do that by its statute which it may not do constitutionally. Where a transaction by a foreign corporation is of a character plainly pertaining to interstate commerce, the statute relating to doing business will be deemed not to have been intended to apply thereto: *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128); *Vermont Farm Mach. Co.* v. *Hall,* 80 Or. 308, 319 (156 Pac. 1073); note, Ann. Cas. 1912A, p. 555; *Dixie Cotton Felt Mattress Co.* v. *Stearns etc. Co.,* 185 Fed.

431 (107 C. C. A. 501); *In re Monongahela Distillery Co.* (D. C.), 186 Fed. 220; *Buttler Bros. Shoe Co.* v. *United States Rubber Co.,* 156 Fed. 1 (85 C. C. A. 167); *Foore* v. *Simon Piano Co.,* 18 Idaho, 167 (108 Pac. 1038); *A. H. Woods Production Co.* v. *Chicago etc. R. Co.,* 147 Ill. App. 568; *Pressed Radiator Co.* v. *Hughes,* 155 Ill. App. 80; *Gould Land etc. Co.* v. *Rocky Mt. Tel. Co.,* 17 Wyo. 520 (101 Pac. 939).

Mr. Pomeroy, in Pomeroy on Const. Law, page 376, says:

"Commerce includes the fact of intercourse and of traffic, and the subject matter of intercourse and traffic. The fact of intercourse and traffic, again embraces all the means, instruments, and places by and in which intercourse and traffic are carried on, and, further still, comprehends the acts of carrying them on at these places, and by and with these means. The subject matter of intercourse or traffic may be either things, goods, chattels, merchandise, or persons. All these may therefore be regulated."

8. The fact that Gates & Company were to distribute the funds received by them as the proceeds of the sale of lumber, in payment for work done in cutting the timber and manufacturing the lumber, would in no way change the transaction. It would be to the same effect as though Gates & Company had paid the money to the officers of the plaintiff, and they in turn had paid for the labor performed.

In *Ware* v. *Hamilton-Brown Shoe Co.,* 92 Ala. 145 (9 South. 136), the head-note reads:

"A contract for the purchase of goods, made between a citizen of Alabama and a Missouri corporation, whether made in Alabama or Missouri, is within the congressional power to regulate interstate commerce; and the corporation may maintain a suit on the contract in Alabama, without alleging or showing a compliance with our constitutional and

statutory provisions as to having a resident agent and a known place of business.''

9. The statute is directed and confined to foreign corporations that transact business in this state. The asking of the aid of the courts to enforce contracts that relate to legitimate business to be done in other states and that are not prohibited by the laws of this state does not constitute doing business in this state within the meaning of the statute.

10. All of the transactions which were negotiated and consummated by the plaintiff within this state, except for convenience, could have been transacted in the State of Washington, and were to be carried out there, except the business with the brokerage firm of G. W. Gates & Company, which was in furtherance of interstate commerce.

Whatever may be the conclusion in regard to the sufficiency of the plea in abatement, the facts in this case, as found by the trial court and shown by the testimony, do not show that the plaintiff was doing such business in this state as to prevent it from obtaining relief in our courts. The trial court erred in dismissing the action.

The judgment of the lower court will be reversed, and the cause remanded for such further proceedings as may be deemed appropriate, not inconsistent herewith.                REVERSED AND REMANDED.