BILANSKY *v.* HOGAN.

1. VENDOR AND PURCHASER— SPECIFIC PERFORMANCE— RECORDING
LAW—ACKNOWLEDGMENT—CONTRACTS.
Where it was provided by a land contract that the first
party was to sell a parcel of land for a down payment
and a price named, and to receive back a mortgage running
one year, that the buyer was to build an apartment house
on the premises, with money which the vendor should
advance, a new mortgage for the total amount advanced
to replace the first one, there was no ground for the con-
tention of the buyer that the mortgage should recite the
land contract or so refer to it and set out its terms as to
extend the instrument on the record when the mortgage
was filed, although the contract as originally drawn was
not entitled to record because not acknowledged and wit-
nessed.

2. SAME—CONDITIONS—DEPENDENT COVENANTS.
Whether covenants in a conveyance are dependent or in-
dependent to some extent depends on the order, in point
of time, in which performance is to take place.

3. SAME—MUTUALITY.
And specific enforcement could not be granted to com-
plainant where the court could not, on both sides, enforce
the contract in all its material parts.

Appeal from Wayne; Hosmer, J.   Submitted Janu-
ary 18, 1916.   (Docket No. 106.)   Decided March 30,
1916.

Bill by Harry Bilansky against Annie J. Hogan for
specific performance of a land contract.   From a decree
for defendant, complainant appeals.   Affirmed.

*Beckenstein & Wienner* (*Maurice Sugar,* of coun-
sel), for complainant.

*Thomas Hislop,* for defendant.

STEERE, J.   Complainant filed this bill to obtain a

decree for specific performance of the following contract:

"This agreement made this 24th day of June, 1914, between Annie J. Hogan of the first part and Harry Bilansky of the second part, both of Detroit, Michigan, witnesseth: That the party of the first part agrees to sell and the party of the second part agrees to buy lots 86, 87 and the southerly ten feet of lot 88 in W. A. Butler's subdivision of the Cass farm on the easterly side of Third avenue between Hancock and Warren avenues in the city of Detroit aforesaid for the sum of eight thousand ($8,000) dollars, upon the following terms: The party of the second part is to pay $300 on this date and the sum of $3,700 as soon as the abstract (Burton or Union Trust's) is brought down to date and examined and found to show a good and merchantable title and receive from first party a good and sufficient warranty deed thereof and the said second party will then make, execute and deliver to first party a mortgage thereon for the remaining ($4,000) four thousand dollars payable within one year dating from this date at six per cent. per annum, interest payable semi-annually.

"It is further agreed between said parties that said second party will erect a three story solid brick apartment building thereon and first party in consideration thereof agrees to furnish funds to the extent of seventy per cent. of the cost of the building and lot, not exceeding thirty thousand ($30,000) dollars as the building progresses after said building has up two stories in height and all bills for material and labor therefor has been paid by said second party and take as a security therefor a first mortgage for the amount as advanced to run five years at six per cent. per annum, interest payable semi-annually, except the first year after the making of said last mentioned mortgage for which year the interest is to be paid at the end of the year and thereafter semi-annually. It is understood that upon the making of said last mentioned mortgage, the first mortgage of $4,000 is to be discharged and the said amount merged in said last mentioned mortgage as part thereof.

"It is agreed that this agreement is to be binding

upon the heirs and representatives of the parties hereto. In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

[Signed]          "ANNIE J. HOGAN. [Seal.]
                "HARRY BILANSKY. [Seal.]"

The bill alleges that complainant has always been ready and willing to perform said agreement, makes tender of performance, and avers that he has often requested defendant to perform on her part, but that she has refused and still continues to refuse, on divers frivolous pretexts. Preliminary injunction is prayed to restrain her from selling or incumbering the property described in said contract. Defendant, answering, admits the contract, denies that complainant has ever requested her to perform according to its terms, or that she ever refused, and avers that on the contrary she has furnished him a satisfactory abstract, offered him the deed called for in said contract, and done all in her power to induce him to perform on his part according to the terms of their agreement, which he refused to do, making unreasonable demands and imposing conditions which the contract did not specify.

The facts are not in dispute. After the contract was entered into, an abstract, furnished in compliance with it, was examined by complainant and found satisfactory, and defendant tendered him, on or about July 14, 1914, a good and sufficient warranty deed of the premises, demanding therefor $3,700 in money, with a mortgage and note in usual form for the remaining $4,000 of the purchase price, payable in one year, according to the terms of their agreement. Complainant refused to pay the money and execute the mortgage as demanded, but tendered a mortgage with the contract in controversy attached and $3,700 in cash, which defendant declined to accept. Complainant did not erect or start any building upon the premises contracted for.

No question is raised as to defendant's request for a note with the mortgage. The trial court found that defendant tendered performance of the contract in due time according to its requirements, and dismissed complainant's bill.

It is to be observed that the contract which these parties agreed upon and signed is not witnessed or acknowledged, and therefore not entitled to record. As inferable from the record and briefs of counsel, complainant had an impression which developed into a conviction that life would not be worth living, even in Detroit, unless this contract was recorded, while defendant scented in this obsession a masked scheme to do her some great wrong. His project, under claim of right conferred by the contract itself, was to have it attached to and made a part of the mortgage which he would give, which would be properly witnessed, acknowledged, and entitled to record, so that the contract would become legally entitled to record with and as a part of the mortgage, while defendant contends no such right is inferable from or can be read into the contract. As a matter of curiosity, it might be asked what difference it would make whether this contract was or was not recorded, either to complainant if he performed on his part according to the first clause of their agreement, acquired title to the property, went into possession, and proceeded with his improvements, thus giving constructive notice to all parties of his rights in the property whatever they might be, or to defendant if she conveyed the title to him on receipt of half the purchase price and a first mortgage on the property securing the balance, as the contract specified? But it is not for the court to reason why on such questions or to make contracts for litigating parties. The question here is, as in all such cases, What are their rights under this contract as it reads?

It is clear that under the first clause of the contract

defendant tendered full performance according to its terms. Complainant refused performance on his part, asserting an additional right, at that time, to make the contract a part of his mortgage by reason of the second clause, which he claims should be read with and modifies the first. The provision as to a mortgage for deferred payment on the purchase price reads that complainant "will then make, execute and deliver to first party a mortgage thereon for the remaining ($4,-000) four thousand dollars payable within one year dating from this date," etc. He contends that by virtue of modifying provisions in the second clause, it should be construed to read that he "will then make, execute and deliver to first party a mortgage thereon, *with this contract attached to and made a part of it,* for the remaining ($4,000) four thousand dollars," etc. No language of that import is to be found in the second clause, but it is contended that such is implied, or to be inferred, from the provision for a merger of said mortgage into one to be given later for money borrowed to make improvements after a proposed building upon the premises is partially constructed by complainant, stated in the second clause as follows:

"It is understood that upon the making of said last mentioned mortgage, the first mortgage of four thousand ($4,000) dollars is to be discharged and the said amount merged in said last mentioned mortgage as part thereof."

One infirmity of this contention is that the events are not contemporaneous.

"In determining whether covenants are dependent or independent, the order of time in which they are to be performed is an important consideration." 6 R. C. L. p. 861.

The manifest intent of the parties as expressed in the two paragraphs or clauses of the instrument is that, after complying with the first, and securing his

title, complainant would erect an apartment building upon the premises. No time of performance is specified, though the intent may be inferred that the building should be up two stories in height and all bills for material and labor paid within the year during which the $4,000 mortgage ran. His right to a merger is entirely contingent upon these subsequent events. The whole subject-matter of the first clause is the purchase of the land, transferring the title, and paying or securing the purchase price. The second relates entirely to proposed improvements on the property and borrowing money to finish them after they have progressed to a certain point. These are not interdependent matters. While the merger mentioned in the second is dependent upon complainant securing title to the land under the first and partially constructing the building as stated, the provisions in the first clause contain the terms of purchase and sale complete in every particular, and nothing else, and we find nothing in the second which can be construed as a condition precedent to the first.

This is a bill for specific performance of contract. It is a well-settled general rule that such relief will not be granted unless the court can enforce the whole contract.

"Specific performance will not be decreed unless the court can, at the time, enforce the contract on both sides; or, at all events, such part of it as the court can ever be called upon to enforce." Waterman on Specific Performance, § 392.

If, as complainant contends, the two clauses of the contract are indivisible and interdependent, the obstacles to enforcing specific performance of the whole contract on both sides are obvious.

The decree is affirmed, with costs.

STONE, C. J., and KUHN, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.