Submitted on briefs February 24, affirmed March 1, 1921.

# LOVELAND *v.* LALLY.

(195 Pac. 819.)

**Contracts—May be Rendered Entire by Intention of Parties.**

1. A contract may be rendered entire by intention of the parties, though otherwise it would be considered severable.

**Contracts—Whether Entire Held Question for Jury.**

2. Under the evidence as to intention, whether a contract—which on casual reading appears to consist of two distinct elements, in no way germane, (1) a simple order by defendant for the delivery of merchandise of the value of the amount of the notes given by defendant, and (2) an agreement for a three-year campaign by plaintiffs and defendant for extension of defendant's business—was an entire contract, preventing, if such, recovery on the notes because of plaintiff's material breach of the part as to the campaign, *held* a question for the jury.

**Contracts—Breach of Agreement as to Campaign for Extending Business Held Material.**

3. Contract consisting of defendant's order for goods, for value of which he gave notes, and agreement for three-year campaign by plaintiffs and defendant for extension of defendant's business, providing for plaintiffs sending their organizer to defendant "for analytical and constructive campaign work," to remain as long as plaintiffs should deem necessary, implies that the organizer should be reasonably competent for the work and remain a time sufficient to accomplish the purpose of his visit, so that she, a young, inexperienced girl, just out of school, not having been the one, nor done the other, there was a material breach of the contract, preventing recovery on the notes, the contract being entire; though there might be recovery for such of the goods as were retained and used.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.

This is an action at law, wherein the complaint alleges the execution and delivery, by defendants to plaintiffs, of six promissory notes of the aggregate face value of $375, no part of which has been paid.

The answer, after a general denial, pleads affirmatively that the execution of the notes was a part

2. Whether contract for sale of goods is entire or divisible, see note in 2 A. L. R. 643.

only of a more extended contract, all of which was in writing, which contract is referred to as "a trade extension campaign and efficiency service." It is further alleged that the defendant (who is a woman) is the proprietor of a retail grocery business in the town of Hammond, and that she signed and delivered to plaintiffs' agent a certain instrument of writing, the exact nature of which she does not recall, in which there were certain forms, "each in the amount of sixty-two dollars," which she signed and which she alleges are the instruments upon which this action is based. It is further averred that all of the printed forms and written matter were all upon a single sheet of paper, and that "each and every part and portion thereof was connected with and conditioned upon each and every other part and portion thereof." It is also alleged that the consideration for defendant's agreement to pay was not only the receipt of the merchandise mentioned in the contract, but also the carrying out by plaintiffs of their three-year campaign of advertising and trade extension; that plaintiffs failed to carry out their part of the agreement; that the campaign, by reason of plaintiffs' default, was a failure; and that there was a consequent failure of consideration.

The reply, after denials, sets out, *verbatim*, the entire contract referred to in the answer and pleads a full performance.

There was a trial by jury, with a verdict and judgment for defendant, and plaintiffs appeal.

Affirmed.

For appellants there was a brief submitted over the names of *Mr. G. C. Fulton* and *Mr. A. C. Fulton.*

For respondent there was a brief prepared and presented by *Mr. Edward E. Gray.*

BENSON, J.—There are but two assignments of error, which challenge the action of the trial court in refusing to give the jury the following requested instructions:

"(1) The first instruction we request is that the court instruct the jury to bring in a verdict in favor of the plaintiffs and against the defendant.

"(2) If the jury find that the contract entered into between plaintiffs and defendant to be a valid and binding contract, and that the plaintiffs have complied with the terms thereof necessary for them to detach the notes, then, in that event, the jury must find for the plaintiffs and against the defendant."

Plaintiff evidently based both of these instructions upon the theory that the written contract of which the notes in controversy formed a part, consists of two independent and separable obligations. The instrument itself, so far as it is of interest here, reads thus:

"P. O. Hammond, State Oregon.

"Sept. 21, 1916.

"Brenard Manufacturing Company,

"Iowa City, Iowa.

"Gentlemen:

"On your approval of this order deliver to me at your earliest convenience F. O. B. Factory point or distributing point the goods and printed matter described on this and reverse side, in payment for which I herewith hand you my six notes aggregating $375. If order is not approved and shipped by you the notes are to be cancelled and returned to me.

"The Brenard Manufacturing Company agrees to send their organizer to us for analytical and constructive campaign work, just as soon as they have completed the necessary preliminary work by corre-

spondence. Organizer to remain for such period as Brenard Manufacturing Company may deem necessary during which time I am to furnish free the conveyance to properly conduct the work, campaign not to start until this is done.

"My last twelve months' sales were not less than $16,000 and based upon this figure, when at any time during the next three years my total gross sales shall exceed $64,000. I agree to pay you 58/100 per cent additional on such excess.

"Three-Year Trade Extension Campaign.

"This three year-trade, extension, campaign is to be ushered in by a six months 'Merchandise Award Campaign' during which time my employees are to receive instruction on 'Business Principles and Efficiency' through your correspondence course. During this six months the catalog feature is to be introduced and for the balance of the campaign period persistently and vigorously pushed in accordance with your methods and instructions.

"It being of supreme importance to the best success of the trade extension campaign, I agree to furnish you within ten days approximately 150 names and addresses of persons whom I believe can be induced to take an active part in the campaign. I also agree to furnish you a list of competitor and catalog house customers. I agree to heartily and cordially co-operate with you in making the campaign a success, take up the shipments promptly, properly display same in my stores, issue deposit checks to the amount of every sale, issue catalogs to every family, persistently push the catalog feature in accordance with your instructions, promptly meet all obligations entered into under this agreement, encourage my employees to carefully study and put into practice your correspondence course and promptly answer your correspondence relative to same; every thirty days I will report to you my gross sales compared with the corresponding month of the year previous and promptly furnish you with all the information you

may request to enable you to push the trade extension campaign.

"Because of the great detriment to my business if this proposition were in the hands of a competitor I am to have the exclusive privilege and use of same for my line in my town for a period of three years, provided I carry out each and every stipulation of this order.

"I am to have the privilege of submitting any question or business problem to your advisory board and their opinion and advice are to be furnished without additional cost.

"In order to protect you in your special methods and plans and in your expenditures this order cannot be countermanded."

This is followed by an itemized list of the merchandise referred to in the opening paragraph of the contract, concluding with the words, "Price * * $375.00."

As a part of this writing, and upon the same sheet of paper, were attached the promissory notes involved, but perforated so as to be easily detached. They were so detached by the plaintiffs before the commencement of this action. This agreement, upon a casual reading, appears to consist of two distinct elements, in no way germane to each other: (1) A simple order for the delivery of merchandise of the value of $375; and (2) a somewhat involved agreement for a three-year campaign, to be conducted jointly by plaintiffs and defendant, for the extension and enlargement of defendant's mercantile business. It appears from the evidence that the merchandise so sold to defendant consisted of jewelry, silver-plated tableware, a phonograph, advertising display cards, coupons, and other devices for issue to customers, together with printed booklets, constituting a "correspondence course in business principles and

efficiency." The jewelry, tableware, and musical instrument were to be used as premiums to be given to customers making purchases at defendant's store, and constituted a vital element in the anticipated success of the "campaign." It will be readily observed, therefore, that the merchandise mentioned in the contract is thereby inextricably involved in the campaign. It is scarcely conceivable that the defendant would have ordered the stuff except for its supposed value in the expansion of her trade. Defendant testified that her understanding of the contract was that the price thereof, as well as the prospective percentage of increased sales, was to be derived from the proposed increase in her business. The plaintiffs, in a letter written to defendant before the contract was signed, have this to say:

"Ours is the only company in the world to-day offering retail merchants such a broad and comprehensive service. We not only are under contract to *increase* the volume of business largely, but are willing to wait until *after* we have done so, for a large part of your profits."

1, 2. There is evidence, therefore, tending to prove that it was the intention of the parties that the contract was to be treated as entire and not separable. The court, under proper instructions, submitted to the jury the question of the intent of the parties in this respect. In determining whether a contract is entire or severable, the law appears to be well settled. In 13 C. J. 562, it is stated thus:

"Primarily the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject matter of the agreement. A contract may both in its nature and its

terms be severable and yet rendered entire by the intention of the parties.''

In the case of *Los Angeles Gas & Electric Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776 (106 Pac. 55), the same doctrine is stated thus:

''It is, no doubt, well settled, as has been repeatedly declared by this court, that 'when the price is expressly apportioned by the contract, or the apportionment may be implied by law, to each item to be performed, the contract will generally be held to be severable.' * * But this rule is not universal. It is subject to the limitation that a contract will be treated as entire, even when the obligations of the one party consist of different acts to be separately paid for, where the nature and character of the agreement show that it was intended to be entire.''

We conclude, as to this question, that the jury was justified in finding that the contract was entire, and that if the plaintiffs had committed a material breach thereof, prior to the commencement of this action, they were not entitled to recover upon the notes.

3. It will be noted that the agreement provided that plaintiffs should send their organizer to defendant ''for analytical and constructive campaign work,'' and that such organizer should remain for such a time as plaintiffs should deem necessary. This agreement, of course, implies that the organizer should be reasonably competent to do the work assigned, and remain for a time reasonably sufficient to accomplish the purpose for which he was sent. There is evidence in the record to the effect that the organizer sent by plaintiffs was a young girl, just out of school, without experience, who remained five or six days, and accomplished nothing. That as a result, the campaign was a signal failure and that defendant's business was not increased to any extent whatever. Under these condi-

tions, plaintiffs were not entitled to either of the instructions requested.

It appears from the evidence, that some of the merchandise received by defendant was by her used as premiums, in an effort to carry out the campaign, and that she has offered to return the remainder and to pay for those items which have been used. This offer was declined by plaintiffs, but they are entitled to compensation for their goods.

The judgment is therefore affirmed without prejudice to any proper proceeding by plaintiffs to recover for the merchandise received from them by defendant.

AFFIRMED.