Argued December 1, 1921, reversed February 21, rehearing denied
April 25, 1922.

# LOVELAND ET AL. *v.* WARNER ET AL.

(204 Pac. 622; 206 Pac. 298.)

**Pleading—Admission in Answer of Things not Averred not to be
Tolerated.**

1. The insertion into an answer of a clause pretending to admit
a fact not pleaded in the complaint is not proper, raises no issue,
is not capable of being denied, and should not be tolerated.

**Contracts—One Seeking to Recover on Covenant must Allege and
Prove Performance, Except Where Covenant is Independent
of Other Covenants.**

2. Where one would seek to recover on a covenant, he must
allege and prove that he himself has performed the covenant on
his part which is concurrent with it; but this is not applicable to
a contract containing several covenants, where the covenant made
the basis of action is independent of the other covenants in the
contract.

**Contracts — Chronological Order Distinguishing Character in Deter-
mining Concurrent Covenants.**

3. The chronological order of performance of different covenants
in a contract is a distinguishing characteristic by which to deter-
mine whether the covenants are concurrent or independent.

**Contracts—Covenant to Pay Notes Held Independent of Covenant
to Increase Business by Advertising Scheme.**

4. A clause constituting a distinct order for goods "in payment
for which" the defendants delivered notes, constituted a complete,
separate, and independent transaction, and seller and payee could
recover without performance of a covenant relating to certain
increase of maker's volume of trade which was not to mature until
a year after the date of contract and after the notes were payable,
especially where the latter covenant was to pay any deficiency in
cash.

**Contracts—Setoff and Counterclaim—Purchaser Held to have Right
by Means of Counterclaim to Recover Damages Under Adver-
tising Scheme.**

5. Where seller delivered goods to be used as premiums in adver-
tising scheme, which were paid for by notes, and seller agreed
that if at the end of a year two thirds per cent of the gross
business of defendant did not amount to the sum paid for the
premiums he would pay to purchaser any deficiency in cash, the
buyer in an action on the notes had the privilege by means of
a counterclaim, under Sections 74, 88, Or. L., to show damage on
account of his business not having been increased to the amount
agreed, but he must show by averment and proof that he complied
with the contract on his part, the covenant as to payment of the
notes being independent, but the covenants as to the doing of

certain acts by the buyer and the payment of any deficiency by the seller being concurrent covenants.

### Contracts—Construction for Court.

6. The construction to be placed on a written contract is a question exclusively for the court under Section 136, Or. L.

### Evidence—Terms of Written Instrument not Varied Under Guise of Explaining or Showing Failure of Consideration.

7. Under guise of explaining the consideration for a note a party cannot vary the terms of a written contract, and, where contract stated that notes were given in consideration of articles to be used as premiums in an advertising scheme, buyer was not entitled to prove failure of consideration in that his business was not increased to the agreed extent, unless by way of counterclaim for damages.

### Evidence—Averment of Intent of One or Both Parties cannot Contradict Plain Language of Contract.

8. In the absence of fraud or mistake, the averment of intent of one of the parties, or both, cannot contradict the plain language of a written contract.

### Names—Defense of Use of Assumed Name Without Filing of Certificate must be Pleaded.

9. The defense that plaintiff has been doing business under an assumed name without filing the certificate prescribed by Section 7777, Or. L., must be grounded on a sufficient pleading.

### Commerce—Requirement of Filing of Certificate Where Using Assumed Name Inapplicable to Interstate Commerce.

10. Section 7777, Or. L., requiring one doing business in the state under an assumed name to file a certificate in the office of the county clerk, does not apply to interstate commerce.

### Pleading—Construction of Pleader must Give Way to Admitted Contract.

11. A pleading cannot give to an admitted contract any construction inconsistent with its terms.

### Commerce — Where Goods Shipped from One State to Another, Transaction Constitutes Interstate Commerce.

12. Where goods are shipped from one state to another on orders solicited in the latter state, the transaction constitutes interstate commerce, not subject to local regulations.

### Commerce—Business Held not Transacted Within State Under Contract Relating to Advertising.

13. Where goods to be used as premiums were sold and shipped from another state, and notes were executed in payment of the premiums, and seller agreed to send organizer to assist buyer within the state, and to pay certain amounts in cash if business of buyer was not increased, and buyer did not permit the organizer sent into the state to do anything in relation to the business, the seller cannot be held to have carried on, transacted, or engaged in business in the state within the meaning of Section

7777, Or. L., requiring one doing business in the state under an assumed name to file a certificate in the office of the county clerk, and the seller could recover the purchase price of the premiums in the state courts without filing such certificate, though it might in the future possibly do something within the ban of the statute.

### ON PETITION FOR REHEARING.

**Contracts—Allegation That Note was Part of Contract Between the Parties Admitted Its Execution—Allegation of Offer to Return Merchandise Admitted It had Been Shipped.**

14. In action on note, where defendants' qualified general denial was followed by a statement that the note was part of a contract under which plaintiffs were to ship certain merchandise to defendants, the actual execution of the note was thereby admitted, and defendants' final allegation that plaintiffs had "wholly" failed to perform was rendered sham by defendants' earlier allegation that defendants had offered to return the same merchandise.

**Pleading—Construed Against Pleader on Demurrer.**

15. On demurrer, a pleading is construed most strongly against the pleader.

From Coos: JOHN S. COKE, Judge.

Department 1.

REVERSED.

For appellants there was a brief and oral argument by *Mr. William T. Stoll.*

For respondents there was a brief and oral argument by *Mr. C. F. McKnight.*

BURNETT, C. J.—This is an action upon six several promissory notes, the complaint being framed in six counts, one upon each note. Except for date and time of payment they are identical. For the purposes of this opinion it is sufficient to set forth a copy of the first note declared upon, as follows:

"69081—345.

"P. O. Marshfield. State—Oregon. 6/20 1917.

"For value received, we promise to pay to the order of The Brenard Manufacturing Company, seventy-two and 50/100 dollars ($72.50), at Iowa

City, Iowa, payable as below four months after date (amount $72.50).

"WARNER GROCERY CO.

"By J. E. WARNER.

"44396 A              Extended to May 20, 1918."

The genesis of the transactions here involved was the making of the contract evidenced by the following offer of the defendants, which was accepted by the plaintiffs at Iowa City, Iowa:

"P. O. Marshfield.  State — Ore.      6-20    1917.

"Brenard Manufacturing Company,

   "Iowa City, Iowa.

"Gentlemen:

"On your approval of this order deliver to me at your earliest convenience F. O. B. factory point or distributing point the goods and printed matter listed on reverse side, in payment for which I herewith hand you my six notes aggregating $435. which you agree to cancel and return to me if order is not approved by you.

"After preliminary work by circulars and correspondence has been done you agree to send your organizer to assist us in constructive campaign work. Organizer to remain for such time as you deem necessary during which time I am to furnish free the necessary conveyance to properly conduct the work.

"I hereby certify that my last twelve months' business was not less than $80,000 and upon this figure my next twelve months' business to be $96,000, and that if 2/3 per cent of my gross business does not amount to four hundred thirty-five dollars ($435) for the next twelve months you will pay me the deficiency in cash, and immediately upon approval of this order send your bond for $435. to cover this agreement with me.

"To make the last above paragraph binding upon you I agree to furnish you within ten days approximately 150 names and addresses of persons outside of my town whom I believe will make good contestants, take the shipments promptly, carry out the

103 Or.—41

Trade Extension Campaign plan, promptly meet all obligations entered into under this agreement, keep the premiums well displayed in my store, issue Premium Deposit Checks to the amount of each purchase, and every thirty days of this contract to report to you my gross business, to cordially co-operate with you and promptly furnish you all information you request to aid the success of the campaign, but it is understood that an omission of any of the above conditions shall release you only from the last preceding paragraph.

"I am to have the privilege of submitting any question or business problem to your Advisory Board and their opinion and advice are to be furnished without additional cost.

"In consideration of your special methods and plans and your expense hereunder, this order cannot be countermanded.

" (These notes to be detached by The Brenard Mfg. Co.)

"Signed—WARNER GROCERY Co., Purchaser.
"By J. E. WARNER.
"P. O. Marshfield.   County—Coos.   State—Ore.
"Freight Station—Same.   Express Office—Same.
"Salesman—J. B. VALLEN."

As stated, the plaintiffs declared upon the notes, and in their complaint set up this offer and acceptance as part of the transaction, averring performance on their part of all the terms of the contract. The answer denies all the averments of the complaint except as stated.

1. It is admitted that the plaintiffs were doing business at Iowa City, Iowa, as Brenard Manufacturing Company. In passing, we note that the defendants in their answer "admit" some things that are not averred in the complaint. As held in *Woolsey* v. *Draper, ante,* p. 103 (201 Pac. 730), in an opinion written by Mr. Justice RAND:

"The insertion into a pleading of a clause pretending to admit a fact not pleaded by the opposite party, is not a proper way to plead, raises no issue, is not capable of being denied, and should not be tolerated."

The answer undertakes to plead the contract according to its legal effect, saying that it is "in writing and in the possession of plaintiffs and that the defendants cannot allege in detail the full terms thereof and should therefore be excused from so doing." It is averred that the merchandise mentioned was shipped to the defendants to be used as premiums to the patrons of defendants in carrying out an advertising scheme for the purpose of increasing defendants' business, and that it was not the intent of the defendants to purchase the merchandise or that there should be a sale of the same to them. It is further stated in the answer that defendants offered to return the merchandise but that the plaintiffs refused to accept the same. The following averment appears in the answer:

"That upon the signing of said note it was then and there agreed between plaintiffs and defendants that the plaintiffs would carry into effect said advertising scheme under the terms of said contract for the purpose of increasing defendants' business, as hereinbefore alleged; that the signing of said note was with such express understanding and agreement, and was the sole and only consideration for said note; that the signing of said note and the services to be performed by said plaintiffs as herein alleged were mutual covenants and dependent conditions; that the plaintiffs have wholly failed, neglected and refused to perform the terms of said contract on their part to be kept and performed, all without reason or excuse known to defendants; that the defendants have at all times been able, willing and ready to perform the terms of said contract on their part to be kept and performed."

According to the abstract, the plaintiffs demurred to the first affirmative defense on the ground that it does not state facts sufficient to constitute a defense; that "it does not state wherein or in what particulars the plaintiffs neglected to perform the contract herein mentioned; and that it does not state that the defendants performed the contract upon their part." The demurrer was overruled, and this is assigned as error.

The reply traverses the allegations of the answer except as therein stated or admitted, and the admission consists of an avowal of the execution of the contract in writing and an averment that the plaintiffs had shipped the merchandise mentioned in the contract. On motion of the defendants, at the close of the testimony for the plaintiffs, the court entered a judgment of nonsuit against the plaintiffs, and this is likewise assigned as error.

2. It is stated in argument that the reason given by the Circuit Court for ordering the nonsuit was that there was no evidence tending to show that the business of the defendants had increased to $96,000 during the year next after the execution of the contract, and that it was incumbent upon the plaintiffs to prove that, as a condition precedent or at least as a concurrent covenant. It is a well-settled principle that where one would seek to recover on a covenant, he must allege and prove that he himself has performed the covenant on his part which is concurrent with the one upon which he would recover: *Lewis* v. *Craft,* 39 Or. 305 (64 Pac. 809); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Longfellow* v. *Huffman,* 49 Or. 486 (90 Pac. 907). This, however, is not applicable to a contract containing several covenants, where the

covenant made the basis of the action is independent of the other covenants in the contract.

"Where covenants, although mutual, are independent, either party may recover damages from the other for an injury which he may have sustained by reason of nonperformance, although he has failed to comply with the stipulations on his part. But where the covenants are dependent upon each other, the rule is otherwise. The question whether covenants are dependent or independent does not arise where the breach of one covenant is offered as a setoff against the breach of another, but only where the nonperformance of one covenant is pleaded as a direct and peremptory bar to an action upon another." 15 C. J. 1221.

"As a rule, however, where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be compensated in damages, it is an independent covenant, and an action may be maintained for a breach of the covenant on the part of the defendant, without averring performance or an offer to perform." 7 R. C. L. 1091.

An analogous precept is thus stated in 13 C. J. 563:

"A test of severability which has frequently been applied, is to the effect that if the consideration is single, the contract is entire; but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So where the portion of the contract to be performed by one party consists of several and distinct items and the price to be paid is apportioned to each item according to the value thereof and not as one unit in the whole or a part of a round sum, the contract will ordinarily be regarded as severable; and this rule applies although the contract may in a sense be entire if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as parts of one whole."

See also the early case of *Tenny* v. *Mulvaney,* 8 Or. 129, 137, where Mr. Justice PRIM said:

"As to whether this contract is entire or severable is a question of construction which depends upon the intention of the parties, to be ascertained from the language employed and the subject matter of the contract. If the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other is apportioned to each item to be performed or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds when the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed."

This case has been consistently followed ever since it was decided.

In *Daly* v. *City of Carthage,* 143 Mo. App. 564 (128 S. W. 265), in considering the distinction between dependent and independent covenants, the court said:

"The authorities all agree that in determining whether covenants in a contract are dependent or independent the intention of the parties must govern. * * This intention must be gathered from the contract according to the ordinary rules of construction, and one of the infallible tests is whether or not a breach can be compensated for in damages. If it can be, then the covenants are held to be independent and a party must pay for what he receives under the contract, but may recoup the damages he has suffered by a breach upon the part of the other party."

See also *Sayre* v. *Craig,* 4 Ark. 10 (37 Am. Dec. 757); *Riddle* v. *Coryell,* 18 N. J. L. 377 (38 Am. Dec. 521, and note); *Big Run Coal Co.* v. *Employers Indemnity Co.,* 163 Ky. 596 (174 S. W. 25); *Couch* v. *Ingersoll,* 2 Pick. (Mass.) 292. In *Hopkins* v. *Young,* 11 Mass. 302, it is held that the decision of the question whether the covenants are dependent or inde-

pendent, "does not depend merely on the arrangement of the words, and the order in which they stand in the instrument; but on the nature of the transaction, and the order of time in which that requires the covenants to be performed by the respective parties." In *Gibson* v. *Gibson,* 15 Mass. 106 (8 Am. Dec. 94), it is said:

"So where there are reciprocal covenants in the same deed, depending on the same rule of damages, one covenant may be pleaded in bar to another to avoid circuity of action. But where the covenants are distinct and independent, they cannot be so pleaded; for the damages may not be commensurate, and each party must recover against the other separate damages, according to the justice of the case."

3. The chronological order of performance of different covenants in a contract is a distinguishing characteristic by which to determine whether the covenants are concurrent or independent: *Bilansky* v. *Hogan,* 190 Mich. 463 (157 N. W. 13).

4. We will apply these principles to the contract in question. The first clause is a distinct order for goods mentioned on the back of the contract, "in payment for which" the defendants delivered the six notes in controversy. This constituted a complete, separate and independent transaction. The promise to pay a certain sum of money absolutely and at all events in consideration of the delivery of the goods, was an independent covenant, practically so characterized by the terms of the contract. The defendants themselves in their offer designated the application of the notes, viz., in payment for the goods. Moreover, as to the time of performance, the notes were made payable in five, six, seven, eight and nine months after date, while the covenant in the contract relating to the increase of the defendants' volume of

trade to $96,000, dependent upon the doing of certain things by the defendants, was not to mature until a year after the date of the contract. By the test of chronologic order which the authorities lay down, the payment of the notes according to their tenor, or in other words, "absolutely and at all events," which characterizes a promissory note, was first to be accomplished, and that, too, in less than a year after the making of the contract.

Still further, by the test of the measure of damages not going to the whole consideration, the covenants are independent. As stated, the notes were to be paid without qualification. The other covenant was that if two thirds per cent of the gross business did not amount to $435 for the twelve-month, the plaintiffs were to pay the deficiency in cash. That could not be ascertained until after the expiration of the year. And moreover, the damages to be claimed under that clause were measured by the parties and went only to the increase of the business and not to the purchase price of the goods; hence the damage did not go to the whole consideration, but only to part, as stated.

5. In brief, having shown that the notes were given for certain goods which were delivered, as the testimony shows and as appears in the answer by the statement that the defendants offered to return them, the plaintiffs disclosed a cause of action against which it was error to grant a nonsuit. If the defendants could show any damage on account of their business not having been increased to $96,000 for the year, it is their privilege to do so under Section 74, Or. L., by means of counterclaim, for the reason that the cause of action would arise out of the transaction set forth in the complaint. In order to do so, however, the defendants would necessarily be compelled to show by

averment and proof that they themselves had complied with the contract on their part. As to the clauses respecting the increase of business, in one paragraph it is stipulated that the plaintiffs shall pay the deficiency of two thirds per cent of the gross business of the defendants, if the same does not amount to $435 for the year; and to make this paragraph binding upon the plaintiffs the defendants agree in the succeeding one to do certain things mentioned in the latter clause. Clearly, these two paragraphs constitute, in respect to their subject matter, concurrent covenants. This is manifest from the language of the second of the two

"To make the last above paragraph binding upon you, I agree * * , but it is understood that an omission of any of the above conditions shall release you only from the preceding paragraph."

This language plainly groups those two paragraphs together as a feature separate and distinct from other conditions of the agreement. The defendants do not aver that they had performed those covenants, or had even tendered performance of them, but, as stated in the excerpt from their answer, they only say "that the defendants have at all times been able, willing and ready to perform all of the terms of the contract on their part to be kept and performed." This is not a sufficient allegation of performance.

6. On the other hand, while the defendants allege generally that the plaintiffs have "wholly failed, neglected and refused to perform the terms of said contract," they do not specify in what the default of the plaintiffs consisted. Nothing is averred in the pleadings to influence in any way the construction to be placed on the contract itself, which, according to Section 136, Or. L., is one exclusively for the court.

The case of *Loveland* v. *Lally*, 99 Or. 483 (195 Pac. 819), decided by the last opinion which the late Mr. Justice BENSON wrote prior to his death, is not controlling in this instance. There, the answer contained allegations imputing fraud to the plaintiffs in the execution of the contract. Here, no fraud is pleaded. There, the case went to verdict, and the jury was given the duty of passing upon the question of fraud as affecting the intent of the parties. Here, the judge took the case from the jury on the ground that the plaintiffs had not shown any increase in the business of the defendants. Even in that case, the affirmation of the verdict and judgment was coupled with the condition that it was without prejudice to the right of the plaintiffs to recover for the merchandise received from them by the defendants. That is precisely what the plaintiffs are trying to do in the instant case. Confessedly by the explicit terms of the contract, the notes sued upon were given for the merchandise, and the plaintiffs are trying to recover the price for which the notes were given.

7. Neither is this a case where a failure of consideration is charged. As before stated, the consideration for the notes is recited by the contract itself. Under guise of explaining the consideration, a party cannot vary the terms of a written instrument: *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135); *Marks* v. *Twohy Bros.,* 98 Or. 514 (194 Pac. 675).

8. In the absence of fraud or mistake, the averment of intent of one of the parties or of both cannot contradict the plain language of the contract. For instance, if a party expressly agrees to pay a sum of money, he cannot plead that he did not intend to pay when he signed. In *Loveland* v. *Lally,* the contract in some respects was similar to the present contract,

but in that instance many more provisions are inserted, and in the contract itself a great deal is said about the operation of an extension campaign designed to increase the business of the defendant. Here, nothing is said in the contract on that subject as obligating the plaintiffs, aside from the duty to send an "organizer to assist in constructive campaign work." No question is made in the answer but that this has been done. The testimony discloses that the plaintiffs did send an organizer but the defendants refused to allow him to proceed, and that they persisted in their refusal. The only other provision binding upon the plaintiffs is that they are to make up the deficiency that two thirds per cent of the defendants' business falls short of the sum of $435. The parties themselves have provided, as already stated, a method of ascertaining damages due from the plaintiffs for failure of the scheme to increase the volume of the defendants' business. Neither party seeks to rescind the contract. It is not for the court to make a new one for either of them. The liability of the plaintiffs to pay the deficiency depends in turn upon the performance by the defendants of their part of the contract specified in the next succeeding paragraph, as above stated. If they would enforce the payment of the deficiency, they themselves must show compliance on their part with the terms of the contract. On all of these subjects *Loveland* v. *Lally* is clearly distinguishable from the present contention.

The plaintiffs have an independent cause of action on the notes admitted to have been given in payment for the merchandise delivered, which was immune to the judgment of nonsuit. On the other hand, it is possible that the defendants can allege the contract,

stating generally that they have duly performed all of the conditions on their part (Or. L., § 88), proving which and the extent of their business during that year to be less than $96,000, they might have a counterclaim against the absolute promise to pay the notes, abating to some extent, if not entirely, the amount of the plaintiffs' claim.

After admitting "that at all times in said amended complaint mentioned, plaintiffs were doing business as Brenard Manufacturing Company at Iowa City in the state of Iowa," the defendants seek to defeat the present action by the following averments in their answer:

"That at all times herein mentioned the plaintiffs were engaged in the advertising business, with the alleged and pretended purpose of increasing the business of their respective patrons and of these defendants, and that, on the twentieth day of June, 1917, at Marshfield, Coos County, Oregon, through their duly authorized agent, entered into the contract, of which said alleged note was a part, to increase the business of the defendants to $96,000 within a period of twelve months from the date of said contract; that as a means or avenue for the bringing about of said increase to defendants' business said plaintiffs were to ship to said defendants certain merchandise enumerated and agreed upon to be used as premiums to the patrons of the defendants for the carrying of said advertising scheme for the purpose of increasing defendants' business as hereinbefore alleged; that it was never at any time or place the intent or purpose of the plaintiffs or the defendants or any of them that the defendants were to purchase said merchandise or that there was a sale of the same to the defendants, but that the sole and only purpose of said merchandise was for the carrying out of said general plan of advertising and the increase of defendants' business, as herein alleged.

"That said contract was in writing and is in the possession of the plaintiffs, and that the defendants cannot allege in detail the full terms thereof, and should, therefore, be excused from so doing. * *

"That said contract so made by said agent of said plaintiffs was approved and accepted by said plaintiffs.

"That upon the signing of said note it was then and there agreed between plaintiffs and defendants that the plaintiffs would carry into effect said advertising scheme under the terms of said contract for the purpose of increasing defendants' business, as hereinbefore alleged; that the signing of said note was with such express understanding and agreement, and was the sole and only consideration for said note; that the signing of said note and the services to be performed by said plaintiffs as herein alleged were mutual covenants and dependent conditions; that the plaintiffs have wholly failed, neglected and refused to perform the terms of said contract on their part to be kept and performed, all without reason or excuse known to defendants; that the defendants have at all times been able, willing and ready to perform the terms of said contract on their part to be kept and performed. * *

"That said plaintiffs were at all times herein mentioned carrying on, conducting and transacting business, as alleged in defendants' first defense to said amended *answer,* and the alleged first cause of action, under an assumed name, and that at all times herein mentioned and at the present time said plaintiffs have wholly failed and neglected and omitted the execution, acknowledgment and filing of that certain certificate prescribed and provided for by Chapter 154, page 270, of the General Laws of Oregon for the year 1913."

The requirements of such certificate are prescribed in Section 7777, Or. L., reading thus:

"No person or persons shall hereafter carry on, conduct or transact business in this state under any

assumed name or under any designation, name or style, corporate or otherwise, other than the real and true name or names of the person or persons conducting such business or having an interest therein, unless such person or all of such persons conducting said business or having an interest therein, shall file a certificate in the office of the county clerk of the county or counties in which said business is to be conducted, which certificate shall set forth the designation, name or style under which said business is to be conducted, and the true and real name or names of the party or parties conducting or intending to conduct the same, or having an interest therein, together with the post-office address or addresses of said person or persons. Such certificate shall be executed and acknowledged by the party or parties conducting, or intending to conduct said business, or having an interest therein, before an officer authorized to take acknowledgment of deeds.''

In view of the plaintiffs' earnest request in their brief, to determine whether the answer brings the case within the purview of the statute quoted, it is well to examine the pleadings of the defendants in that connection, in view of the testimony in the case upon which the motion for involuntary nonsuit was granted.

9. In order to be effectual, this defense, like any other, must be grounded on a sufficient pleading.

10. A further premise is that the statute is not to be construed to apply to interstate commerce.

We will not stop to discuss whether or not the single transaction described in the answer constitutes ''doing business within the state'': *Commercial Bank* v. *Sherman*, 28 Or. 573 (45 Pac. 658, 52 Am. St. Rep. 811). Neither do we enlarge upon whether or not solicitation within the state by an agent of a nonresident concern, of orders for goods to be shipped from a sister state to Oregon, constitutes ''transaction of

business" here: *Spaulding* v. *McNary,* 64 Or. 491
(130 Pac. 391, 1128) ; *Bertin & Lepori* v. *Mattison,* 69
Or. 470 (139 Pac. 330) ; *Deardorf* v. *Idaho National
Harvester Co.,* 90 Or. 425 (177 Pac. 33) ; *Vermont
Farm Machinery Co.* v. *Hall,* 80 Or. 308 (156 Pac.
1073) ; *Endicott, Johnson & Co.* v. *Multnomah County,*
96 Or. 679 (190 Pac. 1109) ; *Major Creek Lumber Co.*
v. *Johnson,* 99 Or. 172 (195 Pac. 177).

11. Assuming but not deciding the sufficiency of the
answer in the feature already mentioned, we proceed
to consider it in connection with the testimony on
which the judgment of involuntary nonsuit was
granted.   One of the defendants, testifying as a wit-
ness for the plaintiffs, admitted that the defendants in
their firm name of Warner Grocery Company signed
the order quoted at large in the amended complaint.
Whatever may be said of the matters set forth in the
excerpt from the answer just quoted, as to its suf-
ficiency in pleading, it must yield in the government
of the case to the contract which it pleads.   In other
words, the pleading cannot give to the admitted con-
tract any construction inconsistent with its terms.
The conception of the pleader as to its legal effect
must give way to the contract itself.   The order made
and signed by the defendants, which it is conceded was
accepted by the plaintiffs, must be the standard by
which to judge whether the things done under it are
elements of interstate commerce or not.

Referring to the order, which is addressed to the
plaintiffs at Iowa City, Iowa, the first paragraph is
a request for the delivery to the defendants of an
assortment of goods listed on the reverse side of the
contract, in payment for which the notes were given.
The articles listed include a phonograph, watches,
jewelry, tableware, advertising and display cards,

etc., together with "Brenard Manufacturing Company's Correspondence Course on Business Principles and Efficiency."

In connection with the so-called "Correspondence Course," an interesting case is *International Textbook Co.* v. *Pigg,* 217 U. S. 91 (18 Ann. Cas. 1103, 27 L. R. A. (N. S.) 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 481, see, also, Rose's U. S. Notes). The plaintiff was an educational corporation having its home offices at Scranton, Pennsylvania. It employed solicitors both traveling and local in other states, not only to solicit subscriptions to its correspondence courses but also to collect the amounts due on such subscriptions. The applications for the courses of instruction were forwarded to and filled at the home office, and the necessary documents were mailed from that office to the pupils. For their own convenience some of the local solicitors maintained offices in different places in other states. Resistance to the payment of a balance due on a subscription was made in a Kansas court on the ground that the plaintiff was not entitled to maintain the action, because it had not complied with certain Kansas statutes. According to the syllabus in Ann. Cas.:

"A correspondence school which makes contracts with its customers in different states by correspondence and sends them books and information on the subjects of instruction is engaged in interstate commerce. A state statute which requires every foreign corporation doing business in the state to file a statement of its condition and obtain a certificate of leave to do business and which provides that no action shall be maintained in the state courts by any corporation doing business in the state without first obtaining such certificate, is unconstitutional as interfering with interstate commerce."

The second paragraph of the order provides that "after preliminary work by circulars and correspondence has been done" the plaintiffs are to send an organizer to assist the defendants in constructive campaign work. Then comes the certificate of the defendants to the effect that their previous twelve months' business was not less than $80,000 and that upon this figure their next twelve months' business should be $96,000, coupled with the condition that if two thirds per cent of the gross business of the defendants does not amount to $435 during that succeeding year, the plaintiffs are to pay the defendants the deficit in cash. In the next preceding paragraph it is not stated by whom the preliminary work by circulars and correspondence is to be done, but in the fourth paragraph it is disclosed that the defendants themselves are to "carry out the trade extension campaign plan." That same paragraph contains several other things to be done, but they are all to be performed by the defendants.

12. An analysis of the whole order discloses three things in which the plaintiffs participate. The first is the shipment of goods on the order of the defendants. By all of the authorities, where goods are shipped from one state into another on orders solicited in the latter state, the transaction constitutes interstate commerce, not subject to local regulation.

13. The next thing is the condition that the plaintiffs are to send their organizer, not "to do constructive campaign work," but to assist the defendants. In other words, the defendants are charged primarily with doing the campaign work; the organizer is only to assist them in their efforts. And the third thing is that the plaintiffs are to pay the deficiency occur-

103 Or.—42

ring if two thirds per cent of the gross business does not amount to $435. All these three things with which the plaintiffs are connected could be done without either of them, either in person or by agent, ever entering the state except through the presence of the organizer. This, however, cannot affect the decision of this case, because the testimony is that when the organizer came, the defendants would not permit him to do anything in relation to their business. At best, in that matter the plaintiffs only appointed an agent who did no business. This does not constitute carrying on, transacting or engaging in business in the state within the meaning of the statute: 14A C. J. 1279. It is plain that the plaintiffs have done nothing yet which cannot be attributed clearly to interstate commerce. All that has been done thus far is to take and fill the order for goods for which by an independent covenant the defendants have agreed to pay. Having made the contract for the sale of goods involving interstate commerce, the plaintiffs are entitled to come into the courts of this state to enforce it, and the institution of this action is not carrying on business in this state: 14A C. J. 1276.

In their effort to enforce the independent covenant for the payment of the notes given for the purchase price of the goods, the plaintiffs ought not to be balked or penalized because possibly in the future they might do something within the ban of the local statute, but which they have not yet done. In *Bruner v. Kansas Moline Plow Co.*, 168 Fed. 218 (93 C. C. A. 504), the company was an Illinois concern and had sold some plows to Bruner and delivered them to him at his warehouse in Kansas City, Missouri. In abatement of the action for the purchase price the purchaser made substantially the same defense which

is here attempted, viz., that the plaintiff had failed to comply with the local statutes regulating foreign corporations carrying on business in the alleged territory of delivery. Speaking for the Circuit Court of Appeals for the Eighth Circuit, Judge SANBORN thus disposes of that contention:

"But there is no evidence in this record that the plaintiff ever did any other act in these territories than to make the sale and delivery of these goods and the attempt to collect their price, and the sale of goods in a state or territory by a foreign corporation by means of a solicitor, the delivery of the merchandise therein and the collection of the purchase price do not constitute doing or carrying on business within such a state or territory within the meaning of statutes prescribing conditions under which foreign corporations may do business therein": Citing many cases; among others: *Ammons* v. *Brunswick-Balke-Collender Co.,* 141 Fed. 570 [72 C. C. A. 614]; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727 [28 L. Ed. 1137, 5 Sup. Ct. Rep. 739]; *Fritts* v. *Palmer,* 132 U. S. 282 [33 L. Ed. 317, 10 Sup. Ct. Rep. 93].

See also *Wagner* v. *Meakin,* 92 Fed. 76 (33 C. C. A. 577); *Woodall* v. *People's National Bank,* 153 Ala. 596 (45 South. 194); *Ichenhauser* v. *Landreme,* 153 Ky. 316 (155 S. W. 738); *Meddis* v. *Kenney,* 176 Mo. 200 (75 S. W. 633, 98 Am. St. Rep. 496); *St. Louis, A. & T. Co.* v. *Fire Assn.,* 55 Ark. 163 (18 S. W. 43); *Charter Oak Life Ins. Co.* v. *Sawyer,* 44 Wis. 387.

It is said that *Dean* v. *Caldwell,* 141 Ark. 38 (216 S. W. 31), is a case precisely like the present, in which it is held that the contract is intrastate in its nature, and not interstate. In that case the language of the contract was:

"On this warranty of sales, Partin Manufacturing Company hereby agrees to increase the purchaser's sales and collections not less than $15,000 in the next twelve months."

In other words, the company there corresponding to the plaintiffs here, expressly, itself, operating in its own right, agreed to accomplish the increase of business. But in the present case the plaintiffs do not stipulate to bring about that result. They have sold some goods to the defendants, including a correspondence course on "Business Principles and Efficiency," by using which the defendants may themselves increase their trade. The defendants covenant to do all that is to be done with the chattels they bought. The plaintiffs only agree to assume the secondary obligation of a guarantor that the result will accrue from the defendants' use of the goods and their efforts prescribed in the contract, to the extent that as such guarantors they will make up the deficiency mentioned. This constitutes a clear distinction between the two cases.

There are two United States Supreme Court cases cited in the Dean-Caldwell case. One is that of *Browning* v. *Waycross,* 233 U. S. 16 (58 L. Ed. 828, 34 Sup. Ct. Rep. 578). There, the contract to be performed included not only the shipment of lightning-rods into a state from another state, but also the furnishing of labor and materials necessary to set them up and attach them to houses in the latter state. Mr. Chief Justice WHITE said this work was within the regulating power of the state, because (a) the affixing of lightning-rods to houses was the carrying on of a business of strictly local character; and (b) because such business was wholly separate from interstate commerce and involved no question of the delivery of property shipped in interstate commerce or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated.

In other words, the stipulation included the doing of business in the latter state. There was an actual affirmative work to be done in the latter state in order to accomplish the fulfillment of the entire contract.

Another case is *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500 (62 L. Ed. 854, 38 Sup. Ct. Rep. 360). There, with materials, supplies, equipment, machinery, appliances and devices brought from New York into Virginia, the plaintiff installed in the latter state a permanent railway signal system, attached to the soil, involving the digging of ditches, construction of concrete foundations, etc., and it was held that *pro tanto* this was the transaction of local business subject to the regulation of the State of Virginia.

In both of these cases a very substantial and original part, if not indeed the principal portion of the undertaking, consisted of local work wholly subsequent to the transportation characteristic of interstate commerce. It was as if a contractor had imported from another state building materials with which he erected a building in the local community.

The case of *Imperial Curtain Co.* v. *Jacob,* 163 Mich. 72 (127 N. W. 772), is not in point here, for the agreement there was that the plaintiff should maintain *in Michigan* for three years an advertisement on a theater curtain in that state. The whole performance of the contract was to take place in the state in which the order was solicited.

A later case is *York Mfg. Co.* v. *Colley,* 247 U. S. 21 (62 L. Ed. 963, 38 Sup. Ct. Rep. 430, 11 A. L. R. 611). There the company, a Pennsylvania concern, had contracted to deliver to the defendant in Texas an ice plant guaranteed to produce three tons of ice per day. The plant consisted of various pumps, compressors,

tanks and other machinery, and it was agreed that these parts were to be shipped from Pennsylvania to Texas, there to be erected and connected. As said in the statement:

"This work, it was stipulated, was to be done under the supervision of an engineer to be sent by the York Manufacturing Company, for whose services a fixed *per diem* charge of $6 was to be paid by the purchasers, and who should have the assistance of mechanics furnished by the purchasers, the supervision to include not only the erection but the submitting of the machinery to a practical test in operation before the obligation to finally receive it would arise. It was, moreover, undisputed that these provisions were carried out; that about three weeks were consumed in erecting the machinery and about a week in practically testing it, when, after a demonstration of its successful operation, it was accepted by the purchasers."

The plaintiff's effort to recover the amount due on the purchase price was resisted in the Texas court on the ground that the plaintiff was a foreign corporation and was not authorized to prosecute the suit, because it had not obtained a permit to transact business in Texas. The United States Supreme Court, speaking by Mr. Chief Justice WHITE, discusses the cases cited in the Dean-Caldwell case and holds, according to the syllabus, that:

"A provision in a contract of sale of an artificial ice plant by which the foreign corporate seller agreed to furnish an engineer who should assemble and erect the machinery at the point of destination, and should make a practical efficiency test before complete delivery, is relevant and appropriate to the interstate sale of the machinery, and, therefore, does not justify the courts of the state to which the machinery was shipped in refusing to enforce payment of the purchase price, on the theory that the corporation was

doing local business in the state without having first secured the permit made by a state statute a condition precedent to the right to sue in the local courts.''

The Dean-Caldwell case is unlike the instant case, because there the plaintiff affirmatively agreed to increase the business of the defendants, while here the plaintiffs only guaranteed that the result of the efforts of the defendants themselves, with the goods and instructions furnished, would be to increase the business a certain percentage.

The plaintiffs accepted the order in Iowa, at their home office. Thus the contract was made in Iowa: 13 C. J. 580. It may be performed even as to the guaranty, without the presence of the plaintiffs in this state, either in person or by agent. The sending of the organizer cannot affect the present juncture, because it was only the appointment of an agent and nothing was done under the agency, owing to the defendants' refusal to allow anything to be done. The principal feature of the business on the part of the plaintiffs was to send their goods and their correspondence course, which they did in response to the order forwarded to them at their home office in Iowa. Like the ice machinery was guaranteed to manufacture three tons of ice per day, so here the plaintiffs guaranteed that if the defendants took the goods and followed out the instructions of the correspondence course, the result of the efforts of these same defendants would produce a gain in business. In the York Manufacturing Co.-Colley case, the plaintiff did not undertake to make the ice. So here, the plaintiffs do not undertake to increase the business. In the former case, the guaranty was that the defendants could make three tons of ice per day with the machinery sold to them. So here, the guaranty is merely that by the use

of the goods and instructions the defendants themselves can increase their own business. Even if well pleaded, the defendants, on the facts admitted, by their own offer which was accepted, do not present a case coming within the purview of our local statute. It is a clear case of interstate commerce, over which our statute has no authority.

When measured by the admitted offer and acceptance, the answer of the defendants is largely sham and must be disregarded in all points where it undertakes to contradict or add to the written order which they themselves made. The motion for nonsuit was improperly allowed and the judgment should be reversed.    REVERSED.

McBRIDE, HARRIS and RAND, JJ., concur.

---

Denied April 25, 1922.

ON PETITION FOR REHEARING.

(206 Pac. 298.)

REHEARING DENIED.

*C. F. McKnight,* for the petition.

*William T. Stoll, contra.*

Department 1.

BURNETT, C. J.—In an earnest argument in support of their petition for rehearing, counsel for defendant criticise the language of the former opinion in it saying that the motion for nonsuit was improperly allowed. The basis of this contention is that it is

not expressly stated in the bill of exceptions that the plaintiff excepted to the ruling of the court on a motion for nonsuit and hence that question was not before us for decision. It is perhaps enough to say that the opinion was grounded mainly, if not entirely, upon the insufficiency of the answer filed by the defendants.

14. Adverting to the pleadings, we find a declaration upon a promissory note, which is set out in full in the complaint, together with appropriate allegations of its execution, failure to pay and demand for judgment. The denial in the answer referring to the complaint is stated thus:

"Deny every allegation, statement, matter and thing contained and alleged therein except as hereinafter specifically stated, admitted or qualified."

If that which is thereinafter "specifically stated, admitted or qualified" shows that the answer does not constitute a defense, the plaintiffs must prevail, for it is manifest they have a sufficient complaint on the promissory note.

The defendants say in their answer that the parties entered a contract of which the alleged note was a part, clearly admitting the actual execution of the note. They also say that the plaintiffs were to ship to said defendants certain merchandise enumerated and agreed upon. It is true they state further and finally "that the plaintiffs have wholly failed, neglected and refused to perform the terms of said contract on their part to be kept and performed." At the same time and earlier in the same pleading they say that "prior to the commencement of said action these defendants offered to return said merchandise."

15. Considering that part of the contract as stated in the answer was that the plaintiffs should ship the

merchandise, the defendants' averment that the plaintiffs had "wholly" failed to perform is rendered sham by the statement that the defendants had offered to return the same merchandise. In other words, construing the pleading most strongly against the pleader, as properly may be done on demurrer, it contains an admission of the note and of performance of the contract at least in part by delivering the goods. Besides this, the defendants do not allege performance on their part of what they say were mutual covenants and dependent conditions. These reasons apparent on the face of the pleadings are enough to render erroneous the judgment of nonsuit, for we have an admitted note and an answer which does not state any reason why the same should not be paid. The petition for rehearing is denied.

REHEARING DENIED.

McBRIDE, HARRIS and RAND, JJ., concur.